LUTHER GILSON, Administrator of LUCY GILSON, *v.* CALVIN
GILSON.

If it be agreed between the parties to a promissory note that payment of the
note may be made in a particular manner, a performance of that agreement
on the part of the maker, before action brought, will be a defence to an
action against him on the note.

The payee of a promissory note, being administratrix on the estate of her
husband, was holden to pay the distributive shares in said estate to the
heirs; and the maker of the note, some time before the giving of the same,
had agreed to pay said distributive shares to the heirs. Some days after
the execution of the note the payee gave to the maker a writing, by which
she agreed, that, when he should pay said shares, the note should be given
up. And it was held, in an action upon the note, that the first agree-
ment, and the writing subsequently executed by the payee, were proper to
be given in evidence under the general issue; and that, in connection with
proof of payment of the shares, they constituted a defence to the note.

*Held*, also, that the receipts of the heirs, acknowledging payment in full for
their said shares, were evidence of such payment as against the payee of the
note.

Although, in a paper offered in evidence, some words may be so spelled, that,
taken by themselves, their meaning would be uncertain, still if, by taking
the whole writing together, the meaning is obvious, the paper will not be
rejected.

The admissions of a wife do not bind her husband, unless made in discharge
of an agency created by him. Therefore, when payment to the husband is
attempted to be shown by proof of the admissions of the wife that *she* had
received such payment, it must first appear that he had constituted her his
agent for that purpose.

ASSUMPSIT on a promissory note, given by the defendant for the
sum of $62,91, dated June 24, 1829, and payable to Lucy Gilson
on demand with interest. Plea, the general issue, and trial by jury.

The plaintiff gave in evidence the note declared on. It was
conceded that Lucy Gilson was administratrix of the estate of her
late husband, Daniel Gilson, and that, on the settlement of his es-
tate, and after the sale of all the personal property, and of all the
real estate, including the reversion of the widow's dower, a small

Gilson, Adm'r, *v.* Gilson.

distributive share thereof, in money, was decreed, by the probate court, to be paid by the administratrix to the heirs of said estate. The order of distribution bore date Aug. 28, 1823.

The defendant then offered evidence tending to prove, that, several years before the execution of the note in suit, he agreed with the said Lucy that he would pay the said distributive shares to the heirs for her. He also offered, in connection therewith, a writing signed by said Lucy in these words. "Reading, June 24, 1829. Received of Calvin Gilson a note, dated June 17, 1829, to the amount of sixty two dollars and ninety one cents, given for the *ears* right of dower, when these *ears* are paid this note is *two* be given up." (Signed) LUCY GILSON.

To all which the plaintiff objected, but the court overruled the objection, and permitted the testimony to go to the jury.

The defendant, among other testimony tending to prove that he had paid to Mrs. Keyes, one of the heirs of Daniel Gilson, her distributive share in said estate, gave testimony to prove that her husband, Keyes, became very poor, and that his said wife was entirely unprovided with a home, and that she came, with her husband's consent, to reside and board with the defendant, and so boarded with him two winters, and that her board for that time amounted to more than her said distributive share; and then offered to show that Mrs. Keyes, while so boarding with the defendant, repeatedly stated that she was boarding out her share in her father's estate,— she being now deceased. To this the plaintiff objected, but the court admitted the same.

To prove payment by him to the other heirs of their distributive shares in said estate, the defendant gave in evidence receipts signed by several of them, acknowledging payment of their said shares, dated prior to the execution of said note; from which it appeared that the whole amount due from the said Lucy Gilson to the remaining heirs, at the time of the execution of said note, was precisely equal to the amount for which said note was given; and also offered receipts, signed by the remaining heirs except the said Mrs. Keyes, dated subsequent to the execution of the note, acknowledging that they had received payment of said distributive shares from "Lucy Gilson, administratrix, by the hand of Calvin Gilson,"—which

59

was also the form of the receipts given prior to the execution of the note. To the admission of these receipts the defendant objected, but the court admitted the same.

Verdict for the defendant. Exceptions by plaintiff.

*S. Fullam* for plaintiff.

I. We insist that the court erred in admitting evidence of the agreement made several years before the execution of the note in suit. 1. It did not tend to prove the issue. 2. If there was a subsequent agreement on the same subject, or if the same agreement was reduced to writing, as the defendant pretends, then the evidence was clearly inadmissible. 3. If the effect of it was to show that the note was to be paid in any manner different from what the note discloses, it should have been excluded.

II. The paper signed by Lucy Gilson was inadmissible in evidence under the general issue. 1. Because it did not purport to have been executed at the time of the execution of the note, but subsequently. 2. It does not show that the heirs of Daniel Gilson were to be paid off by the defendant. The words, " the *ears* right of dower," can have no application to their interest in said estate. Indeed, the whole paper is unmeaning, and wholly improper to be given to the jury for any purpose whatever. 3. But, supposing the word " ears " to mean Daniel Gilson's heirs, the defendant would not be obliged to pay the note after they were paid their shares, notwithstanding they might have been paid by the said Lucy; in that case it is difficult to see any consideration for the paper. 4. The defendant did not bind himself to pay the heirs; it was a mere privilege, at most, and, if he did pay them at the request of Lucy Gilson, it would be the subject of an offset, and could not be given in evidence under the general issue.

III. We insist that the receipts of the heirs were not admissible. If it were material to prove that the persons, whose names are signed to them, were paid the amounts therein named, it should have been done by legal testimony; it could not be done by their admissions, certificates, or receipts,—for one would be as good as the other.

IV. The admissions of Mrs. Keyes were certainly not admissi-

ble. 1. The admissions of the wife can never be given in evidence, even against her husband; much less to establish a fact between other parties. 2. She could not have received her share of Daniel Gilson's estate, and discharged the administrator. How then are her acknowledgments of payment material, or admissible?

*Chandler* and *Washburn* for defendant.

1. The proof of the first agreement was for the purpose of showing how the defendant came to give his note to pay the heirs, and why the note was less than the whole amount first due the heirs. The writing clearly describes the note in suit, and as clearly shows the purpose of the note, and how it was to be paid. It undoubtedly means that the heirs are to be paid their distributive shares; otherwise it can mean nothing, as the *dower* belonged to the widow, and its reversion had long before been sold, and its avails were in the distribution. The whole state of circumstances, under which the note was given, was admissible, to show its meaning and intent.

2. The receipts were admissible. 1. When Lucy Gilson agreed that the defendant should pay the heirs, that made them her agents to receive the pay and give the necessary receipts therefor. 2 Stark. Ev. 41. *Biggs* v. *Lawrence*, 3 T. R. 454. 2. The receipt of a person, to whom, by law, or by the agreement of the parties, money is going, is always good *prima facie* evidence; and they were necessary and sufficient for the plaintiff's security. *Balance* v. *Frisby et al.*, 2 Scammon's R. 65, [Kinne's Law Compend. 142.] 3. It is probable the defendant could never have defended himself, however clearly he had proved the payments, without showing that he took receipts for the security of Lucy Gilson; and if so, they were clearly admissible. 4. They were admissible to show the dates; for if these be compared with the note, it will be found that the defendant had, before the giving the note, paid just enough, together with his own share, to leave due to the heirs then, with interest, the amount of the note. Such a coincidence tends strongly to show the purpose of the note to be what the defendant claimed.

3. In relation to the admissions of Mrs. Keyes, the defendant insists that they were admissible. The share belonging to her was,

Gilson, Adm'r, *v.* Gilson.

by consent of her husband, received by her. Her husband made her his agent to receive support and pay of the defendant, and therefore her statements, while so acting, were *res gestæ* and admissible,—especially as she had subsequently deceased.

The opinion of the court was delivered by

HEBARD, J. The note, upon which the present action is predicated, was given by the defendant to the plaintiff's intestate, and upon trial, under the general issue, the defendant gave evidence which tended to prove, that, some years before the giving this note, he had agreed with the intestate to pay to the heirs of his father's estate, of which the intestate was the administratrix, the several distributive shares; and also, he gave in evidence a paper signed by the plaintiff's intestate, by which she agreed, that, when those shares were paid, this note should be given up. All this was objected to by the plaintiff, because it did not tend to prove the issue. That this agreement was without consideration forms no objection to it, after it has been performed by the other party. This agreement was not in the nature of *accord* and *satisfaction*, so as to require it to be pleaded. It was strictly and technically a payment, only that it was stipulated to be paid to other persons. So that the parol agreement, before the note was given, together with the written acknowledgment, after the date of the note, of such understanding and agreement, is proper evidence under the general issue. That payment was accepted at a different time, or place, or in a different manner, from that stipulated in the note, does not alter the fact; it is payment still.

There was a further objection to the paper, growing out of its ambiguity. If the paper was so ambiguous and uncertain, that, with a fair and reasonable intendment, the meaning could not be ascertained, it ought to have been rejected. To give an interpretation to a transaction, it is to be understood with reference to all matters connected with it. If in a writing some words are so spelled, that, taken by themselves, the meaning would be uncertain, still if, by taking the whole writing together, the meaning is obvious, it will not be rejected for that. This paper, viewed in this light, is no way ambiguous, nor is its meaning obscure.

The plaintiff also objected to the receipts of the several heirs, as being no evidence of payment. We also consider this objection

Gilson, Adm'r, *v.* Gilson.

without foundation. The several heirs, for the purpose of receiving those payments, were *quasi* agents of the said Lucy, and, by an arrangement between her and the defendant, those payments were to answer a double purpose,—that of extinguishing their claims upon her for their distributive shares, and that of liquidating the note which the defendant had given the said Lucy, for the property which she held, and out of which those shares were to be paid. Under this arrangement, the receipts were just as good evidence *against* the said Lucy, in a suit between her and the defendant upon this note, as they would be *for* her, in a suit between her and the heirs for their distributive shares.

But there is another objection, that we consider more formidable. For the purpose of proving the payment of the share belonging to Mrs. Keyes, one of the heirs, the court permitted the defendant to prove the sayings of Mrs. Keyes, during the lifetime of her husband, in which she *admitted* that she was boarding out her share with the defendant. This is claimed to be admissible on the ground that she was the agent of her husband, and that the admissions were made during the execution of her agency. To establish this view, an important fact is assumed without proof,—the agency of the wife. The case finds that she was boarding with the defendant, by the consent of her husband; but it does not appear that he consented or understood that he was thus receiving her share in her father's estate. That such was his understanding cannot be *presumed,* for he had no legal claim upon the defendant, nor does it appear that Mr. Keyes or his wife knew of the arrangement between the defendant and the said Lucy, by which the defendant was to pay these shares. The testimony tended to prove that Mrs. Keyes was boarding with the defendant with her husband's consent. Upon what terms or for what purpose he consented does not appear. He might have regarded it as a gratuity, or he might have made provision for the payment in some other way. As the admissions of Mrs. Keyes were improperly admitted, the judgment of the county court is, for that reason, reversed.