SOLOMON REED v. JAMES RICE.

*Witnesses. Presumption. Admissions and Declarations. Release.*

In a court of error, after the trial is closed, and the witness has been rejected, or his testimony excluded, it is incumbent upon the excepting party to show that error has intervened, for the presumption is in favor of the regularity of the proceedings in the court below.

If, in a trial, it is important to show a payment to some third person, proof which would be good against that third person, is admissible to establish such payment.

Where the witness was interested, and his deposition was taken, and the release to him was not executed until after the testimony was taken, it was held that the deposition was properly rejected.

If the admissions or declarations of a person are competent evidence in a case, they may be shown, by writing under the hand of the party, or by a witness who heard them made, or the party himself may be called, if a competent witness.

TRESPASS, in which plaintiff claimed to recover the value of a pair of stags, alleged to have been taken from his possession by defendant, on the 20th day of May, 1850.

Plea, the general issue, and notice, that defendant will give in evidence, and rely upon in defence and justification of the supposed trespass, the following special matters, to wit: That one Milton Brown, of Pawlet, in the county of Rutland, was the lawful owner and possessor of the said stags at the time they were taken, and for a long time previous thereto. That on the 20th day of May, 1850, one Jacob Edgerton, of Rutland, in the county of Rutland, put into defendant's hands a certain writ of attachment, in his, said Edgerton's favor, against said Milton Brown, duly signed by one Martin D. Strong, &c., and that defendant, by virtue of said writ, seized and took said stags as the property of said Brown.

That said Edgerton recovered judgment against said Brown, in the same suit in which the said stags were so taken by defendant as aforesaid, by the confession of said Brown, on the 30th day May, 1850, before David Whedon, Jr., then a justice of the peace, within and for the county of Rutland, for the sum of two hundred and fifty dollars and fifty cents damages, and four dollars and sixty-four cents costs.

Reed *v.* Rice.

That said Jacob Edgerton, on the 30th day of May, 1850, took out an execution on said judgment according to law, and on the 31st day of May, 1850, put the same into the hands of defendant to levy, according to law, upon the property of said Milton Brown, and that defendant was duly authorized and empowered by said David Whedon, Jr., justice as aforesaid, at the time of issuing said execution, to serve and return the same, and that said stags were duly taken and sold upon said execution, as the property of said Brown, &c.

Upon trial, the plaintiff introduced evidence tending to show that the stags were in his possession at the time when they were alleged to have been taken by defendant from the possession of plaintiff, and that they had been in plaintiff's possession from the fall of 1849, until about the 20th of May, 1850, when they were taken from the plaintiff's possession, against his will, by defendant.

The defendant then introduced evidence, tending to show that the stags, on or about the 20th of May, 1850, were taken by him as an authorized officer, upon a writ of attachment, in favor of one Jacob Edgerton, against one Milton Brown; and gave in evidence a copy of said writ, judgment, execution, and proceedings thereon.

Also, that in the fall of 1849, and up to April 9th, 1852, one Grove M. Harwood and Marson Edgerton ,were partners, engaged in the business of lumbering, and that said Harwood & Edgerton, in September, 1849, were the owners of the stags, and that they put said stags into the possession of one Isaac Reed, the son of the plaintiff, and made a conditional sale of them to said Isaac, for sixty dollars, under the agreement that they were to remain the property of said Harwood & Edgerton, until *paid for by said* Isaac Reed; and that the stags remained in the possession of said Isaac from that time till April 9th, 1850, who was during that time, or until a few days previous to April 9th, 1850, engaged in a job, drawing lumber for Harwood & Edgerton, from their timber lot to their saw mill. And also introduced evidence tending to show, that on the 9th of April, 1850, Harwood & Edgerton sold said stags, with all, or nearly all of their personal property, amounting to nearly one thousand dollars, to said Milton Brown, and that said Isaac Reed did not pay for said stags; but there was no evidence tending to show that Milton Brown, or Harwood & Edgerton, ever took possession of the stags after they first went into the possession

of Isaac Reed; but the contrary appeared from the evidence.

The plaintiff then introduced evidence, tending to show that some time in October, 1849, after the stags went into the possession of Isaac Reed, and while he had possession of them under said contract, one of the stags broke his leg; and that on this occasion, in pursuance of an offer made by plaintiff to buy the stags, the said Harwood, on behalf of Harwood & Edgerton, gave Isaac Reed permission to dispose of the stags to the plaintiff, for forty-five dollars, in payment to the plaintiff for boarding Isaac Reed, workman on said job, and for which board, said Harwood & Edgerton, by a previous agreement, were liable to plaintiff to pay; and that said Isaac Reed did, in pursuance of said permission and authority, sell said stags to the plaintiff absolutely, for forty-five dollars, on the terms aforesaid, and under a further agreement, that said Harwood & Edgerton should charge said Isaac Reed fifteen dollars, to make up the original price of sixty dollars.

The plaintiff, also, offered to show by one Charles Forbes, that about the same time of the said sale to plaintiff, (which was in October, 1849, and while Isaac Reed had the stags,) he had a conversation with said Harwood, in which Harwood said one of the stags he let Isaac Reed have, had broke his leg, and that he was going to see about it; and that he started towards Solomon Reed's, where the stags were kept, and was gone a few hours, and came back, and said that he had sold the stags to Solomon Reed, the plaintiff, for forty-five dollars, to pay for board, and that it would save paying so much money; and that he was to charge Isaac Reed fifteen dollars to make up the sixty dollars, and that Isaac Reed was to be the loser of the fifteen dollars. This conversation was during the time that the defendant claimed that Harwood & Edgerton owned the property in question.

The defendant objected to this evidence, but the court overruled the objection, and the testimony was introduced, and was in substance as above stated.

The said Harwood, at the time of the trial, lived in the state of New York; the defendant had taken and offered his deposition, and said Brown had executed a release to Harwood before the taking of the deposition; the court rejected the same on the ground of interest in the witness, found by the court from testimony introduced by plaintiff. The defendant again offered said deposition

of said Harwood, after the execution of a release upon the trial, by Marson Edgerton, in the name and in behalf of Harwood & Edgerton, to Milton Brown. To the admission of the deposition, the plaintiff objected, on the ground of interest in the witness Harwood, and the court sustained the objection, and excluded the deposition.

To the decision of the court, admitting the testimony of Charles Forbes, and excluding the deposition of Harwood, the defendant excepts.

*Fayette Potter* for defendant.

1. The declarations of Grove M. Harwood were mere hearsay, and therefore inadmissible. They were not part of the *res gesta.* They were declarations of a competent witness for the plaintiff, made by a vendor in favor of his pretended vendee. *Ballard* v. *Billings,* 2 Vt. 309. *Warner* v. *Mc Gary,* 4 Vt. 507. *Carpenter* v. *Hollister,* 13 Vt. 552. *Hines* v. *Soule,* 14 Vt. 99. *Ellis* v. *Howard,* 17 Vt. 330. *Elkins* v. *Hamilton,* 20 Vt. 627. *White* v. *Morton,* 22 Vt. 16. *Aiken* v. *Peck,* 22 Vt. 255. *Cox* v. *Hall et al.* 18 Vt. 191.

2. Harwood's depositions were improperly excluded; his interest was either balanced, or in favor of the plaintiff. *Phelps* v. *Hall,* 2 Tyler, 399. *Ellis* v. *Howard et al,* 17 Vt. 330.

*D. Roberts, and J. B. Bromley* for plaintiff.

1. The declarations of Harwood are admissible, being made at the time when, as defendant claimed, he was owner; they were admissible against Harwood, and should be, against his successor in title. Such is the general rule as to real estate, choses in action, and other personal property. 1 Cow. & Hill's Notes, 644, & seq. *Ivat* v. *Finch,* 1 Taunton, 141.

The act of Harwood, in going towards and returning from Reed's, was admissible, as a fact tending to confirm the statement of Isaac Reed. But the purpose of that visit could be shown only by Harwood's declarations accompanying his act of going and returning.

Thus these declarations characterize the act, and so are *rerum gestarum.* 14 N. H. 343. See observations of REDFIELD, J., in *Elkins* v. *Hamilton et al.* 20 Vt. 630.

2. As this was an admission of Harwood against his interest, and against his title, the objection to the evidence is not so much on account of any supposed inherent weakness, as that it supposes a higher degree of evidence to exist, to wit—Harwood's testimony as a witness to the fact admitted. Thus the exclusion of such admissions is made to stand upon the reason that the party making them " is still alive," " might have been called," " could be a witness," " is an admissible witness," &c.   *Hine* v. *Soule,* 14 Vt. 106.   *Carpenter* v. *Hollister et al.* 13 Vt. 555.   *Warner et al.* v. *McGary,* 4 Vt. 509, 511, 512.   *Ellis* v. *Howard et al.* 17 Vt. 335.

But here the testimony of Harwood could not, in contemplation of law, be procured ; for

*First*—he was beyond the jurisdiction of this state.

Such absence of an attesting witness to a deed, is sufficient reason for admitting secondary evidence of execution and attestation. 1 Phil. Ev. 473.   2 Cow. & Hill's Notes, 1294.

*Secondly*—he was so far interested in the result of the trial as that the plaintiff could not have compelled him to testify.

This interest was two-fold.   1st, as vendor to Brown, warranting title—2nd, as ultimate receiver of proceeds.   Thus the plaintiff recovering, a new execution on *scire facias* may issue against Brown, and upon such recovery, Harwood's credit on his debt to Brown is wiped out.   *White* v. *Ernest,* 1 Vt. 181.   *Mamon* v. *Lamb,* 7 Cow. R. 174.   1 Cow. & Hill's Notes, 141.

*Thirdly*—Harwood being the party benficially interested in the suit, and with Edgerton, the only party ultimately interested, his admissions binding himself, must bind his trustee, and all who, as parties to the record, seek through the machinery of a law-suit to secure that interest to him.   1 Phil. Ev. 90, 91.   1 Cow. & Hill's Notes, 167-8.   *Lyman* v. *Lull,* 20 Vt. 349.   *Nicholson* v. *Holman,* Windsor Co. March Term, 1850.   2 Wash. Dig. 289, sec. 23.

2. That the deposition of Harwood was not admissible for the defendant.

The first release discharged Harwood's liability as warrantor of title only to Brown.

Harwood's resulting interest in the oxen, or their proceeds, remained.

The second release was' nugatory. It could not retroact. The witness must be indifferent in interest when he testifies.

The opinion of the court was delivered by

REDFIELD, CH. J. Questions in regard to the rejection of witnesses, by reason of interest, have not been much favored of late, in courts where the trial of actions is had. In *Shipton* v. *Thornton,* 9 A. & E. 327, Lord Ch. J. DENMAN says, and very justly we think, "objections on the score of interest are not to be favored. The safe rule is, to admit the witness, whenever there is doubt of the fact."

But in a court of error, after the trial is closed, and the witness has been rejected, or his testimony excluded, the rule of presumption is somewhat changed. It is then incumbent upon the excepting party to show that error'has intervened. The presumption is then in favor of the regularity of the proceedings in the court below.

And it seems to us, that the'rejection of Harwood is not shown to have been erroneous. It would seem, that the result of a verdict for defendant, in the case, which the witness sought to establish by his own testimony, would be to confirm the sale of the cattle made by defendant upon Brown's debt, and thereby to impose upon Brown the duty of applying the value of the cattle upon his debt against Harwood & Edgerton, and his release to them will not affect the question, either way. And their release to him was not executed until after the testimony was taken. So that the witness was clearly interested in favor of the defendant, and properly excluded, unless there was some countervailing interest in favor of the plaintiff.

That would be so, where the case turned upon some question of title, when the witness was bound to answer for the defect. But here the effort was to show, that Isaac Reed had not performed the condition of the sale to him, and that Harwood had not waived it, or consented to the sale to the plaintiff, and this being established, either way, imposed no obligation on the witness to make good the title to plaintiff. And the witness would stand very much as in cases of alleged fraudulent sales of his property, which is subsequently attached by his creditors. He is regarded as competent to testify for the fraudulent purchaser, because such purcha-

ser can have no action against the fraudulent vendor to make good the title, the vendor and vendee being in *pari delicto.* *Seymour* v. *Beach et al.* 4 Vt. 493. So that, here being no countervailing interest on behalf of the plaintiff, the witness is incompetent by reason of his bias for the defendant.

In regard to the other question made in this case, it seems to us, not to come within the principle of the rule laid down in *Carpenter* v. *Hollister*, 13 Vt. 552, and the other cases, in this state, which have professed to follow that case.

The declarations of Harwood, which were allowed to be proved in the case, are not declarations in regard to the title of the cattle, while he owned them; but mainly after he had parted with them, as to the mode of his disposing of them.

But it seems to the court, they were admissible, as showing an admission of Harwood, which would bind himself and Edgerton, as to their claim on the cattle. The only controversy in regard to plaintiff's title to the cattle, so far as we learn from the case, arose upon the point of Isaac Reed having paid the price secured by the condition in the sale, i. e. $60. And this admission went directly to show, that the condition had been fulfilled, or waived, by the cattle going to the plaintiff for $45, and fifteen dollars being charged to Isaac Reed. The only question then is, whether it was competent to make out this point, by showing such declarations.

It was held by this court, in *Gilson* v. *Gilson*, 16 Vt. 464, that it was competent to show payments to a third person, not party or privy in the suit, by producing the written receipt of such third person. A receipt is nothing more than the admission or declaration of the person, and explainable, or liable to disproof as much as a verbal declaration. And one being proof, the other is equally so. And perhaps there is no good reason why both should not be. If it is important in a trial to show a payment to some third person, perhaps there is no good reason why proof, which would be good against that party, should not be received, to establish such payment. If so, his admissions are sufficient, as was held in *Gilson* v. *Gilson.* We do not feel disposed to question the soundness of that decision, and it is a full authority for this part of the case.

Judgment affirmed.

NOTE. It has sometimes been said, that you cannot show the admissions or declarations of a party, who is himself a competent witness in the case, but must

call him as a witness. But we apprehend there is no soundness in this declaration. If the admissions of a person are competent evidence in a case, it is not important how they are shown. It may be by writing, under the hand of the party, or by a witness, who heard them made, or both, or the party himself may be called. And if called, and does not recollect the admissions, or if he denies making them, they may still be shown by other testimony. All that can in any case be made out of the party omitting to call the person, making the admissions, to prove them, is merely one of presumption or argument. The omission to call the very person making .the admissions, when he is a competent witness, is always liable to remark, and will weigh more or less, according to circumstances. But this is all which can be justly objected against such course. If the admissions are themselves evidence, it matters not how they are shown, so it be satisfactory to the triers, to show they were in fact made.