THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE, PLAINTIFF IN ERROR, v. STANDARD OIL COMPANY, DEFENDANT IN ERROR.

Argued November 19, 1909—Decided November 14, 1910.

1. Ordinarily, books of account are legitimate *prima facie* evidence to show a sale and delivery of personal property in the usual course of business.
2. Where books of a city water department purporting to show delivery of water to defendant were not in fact a record of the sale and delivery of water, but of 'conclusions drawn by the water department from readings of various meters and conduits leading to defendant's premises, the books were not evidence of a sale and delivery of water to defendant.
3. In an action by a city for water furnished to defendant, it could not be assumed that the meters in question registered accurately, in the absence of proof that they had ever been tested to determine their accuracy, where such assumption led to the conclusion that defendant unlawfully abstracted water from plaintiff's main, which did not pass through the meter.
4. In a suit on a contract for water sold and delivered to defendant at an agreed price, evidence showing a right in plaintiff to recover damages from defendant for the latter's negligent performance of an alleged duty to prevent loss of water from breaks in a pipe on defendant's premises was properly excluded.
5. A question calling for expert opinion based on a fact assumed, which was neither admitted nor proved, was properly disallowed.
6. In an action for water furnished defendant, note-books of meter readers were properly excluded, where the persons who transcribed the readings into the books were not called to identify them or to prove their accuracy.
7. Where, in a suit to recover for water furnished, one of plaintiff's witnesses testified that all meters get out of order at times, an

offer of evidence that no change or repairs had been made to certain of the meters in question, at any time after their location, unaccompanied by evidence that the meters had been examined and found to be apparently in good order, was properly disallowed.

On error to the Supreme Court.

For the plaintiff in error, *Elmer W. Demarest.*

For the defendant in error, *Charles W. Fuller.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   This is an action on contract brought by the city of Bayonne to recover the price of water averred to have been sold and delivered by the city to the defendant company from June 1st, 1903, to February 20th, 1906, at the rate of one dollar per thousand cubic feet.

The defendant, for a number of years prior to 1904, had been a large consumer of city water at its plant at Constables Hook, and had paid for the quantity consumed each month as indicated by twenty-three meters installed at various places upon its property by the city, this being the only method of determining the amount of water delivered to it by the city, prior to the 1st of June, 1903.   On that date the municipality installed two large check meters at the intersection of avenue I and East Twenty-second street, a distance of more than a quarter of a mile from the nearest supply pipe running to the plant of the defendant company.   These two meters were intended to measure all of the water supplied to consumers in the Constables Hook territory, there being seven of them beside the defendant, and all of them being manufacturing concerns.   Upon the premises of each of these other consumers meters were also installed by the city for the purpose of measuring the water supplied to them.   Early in April, 1904, the city installed another check meter (known in the case as the barrel factory meter) upon a main through which only the water supplied to the seven other consumers passed.

On the 1st of January, 1904, the city having theretofore

been informed by its agents in charge of its water system that the amount of water passing through the two avenue I meters from the time of their installation, as registered by those meters, was much greater in quantity than the amount registered by the twenty-three meters of the Standard Oil Company, and the meters of the seven other consumers, rendered a bill for the whole of the alleged excess water to the defendant company, upon the assumption that the same had all been received and used by it. Each month thereafter, until April 1st of that year, the same condition as to the excess water being reported to exist, a similar bill was presented to the defendant. After the barrel factory meter was installed the reports made to the city by the water department showed that the amount of water registered each month by the avenue I meters, after deducting the amount registered by the barrel factory meter, was much larger than that registered upon the twenty-three meters of the defendant company, and bills for the excess were rendered by the city to the company from time to time up to January 1st, 1906. The defendant each month paid for the quantity of water delivered to it as registered by its twenty-three meters, but persistently denied any liability to pay for any water in excess of that amount, and refused to pay for such excess.

The present suit is brought to recover for the excess water which the city claims has been received by the defendant at the contract price of one dollar per thousand cubic feet. The trial of the case resulted in the direction of a judgment of nonsuit, and the present writ is sued out to test the validity of that judgment.

The following was the case made by the plaintiff as to sale and delivery: Two employes of the water department testified that during their service in the department they had read the avenue I meters and the barrel factory meter; that they entered their readings in books kept for the purpose and turned those books into the department. Their books, if in the court room at the time of the trial, were not identified by them. The readings of one of the witnesses covered a period of about seven months immediately preceding the 1st

of January, 1906. The readings of the other covered a period of about two months in 1904, or 1905. No other employes who read these meters were called by the plaintiff to testify to the fact. The books of the water department of the city showing the account upon which the suit was based were put in evidence. The account contained a statement of the number of cubic feet of water charged against the defendant each month during the period embraced in it (*i. e.,* from June 1st, 1903, to February 20th, 1906), the price thereof, the payments made by the defendant, and the balance remaining unpaid. The water registrar of the city testified that the quantity of water charged against the defendant each month from June, 1903, to April, 1904, was the amount registered by the avenue I meters, less the amount registered by the meters of the seven independent consumers, and that the quantity charged against it each month after April 1st, 1904, was the amount registered by the avenue I meters, less the amount registered on the barrel factory meter. Testimony was also introduced showing that at different times during the period covered by the account, the dials were missing on one or more of the twenty-three meters in the defendant company's plant, and that while this condition lasted the amount of water passing through the disabled meters was averaged by the water department. This is the whole of the proof put in by the plaintiff in support of its contention that it sold and delivered to the defendant greater quantities of water than were shown by the registration of the twenty-three meters on the defendant's plant.

Ordinarily, books of account are legitimate *prima facie* evidence to show the sale and delivery, in the usual course of business, of personal property. *Oberg* v. *Breen,* 21 *Vroom* 146. And so, if the plaintiff had put in its books showing the account against the defendant, without explanation as to the manner in which it was made up, and then rested, it would have established a *prima facie* case against the defendant, for the books apparently show the sale and delivery to the defendant of the amounts of water specified therein. But the testimony of Mr. Hickey disclosed that the account in the

books was not, in fact, a record of the sale and delivery of water, but a record of the conclusions drawn by the water department from the readings of the various meters hereinbefore referred to. Such a record proves nothing against the defendant, and is no evidence of the sale and delivery of water to it. But it is contended by the plaintiff that the books are competent evidence of the readings of the meters; and that these readings show the delivery to, and use by, the defendant of the quantity of water charged against it. Conceding, for a moment, that the books have the probative force claimed for them, they fail to establish a case against the defendant, for there is nothing in the proofs to show that the avenue I and the barrel factory meters, rather than the twenty-three meters on the defendant's plant, accurately registered the quantity of water passing through them. Apparently no tests were ever made by the city of any of them during the whole period covered by the account, notwithstanding the fact that, as Mr. Hickey himself testifies, "at times all meters will get out of order." Without such tests, with no proofs to show the accuracy of the registration of either set of meters, there was nothing from which a jury could say that the one set of registrations, rather than the other, should be accepted. This is not denied. But counsel for the plaintiff contends that, in the absence of proof to the contrary, all of the meters should be assumed to have registered accurately, and argues that on this assumption the conclusion follows that the defendant unlawfully abstracted from the main, from some point or points between the barrel factory meter and those installed upon its plant, the amount of water for which this suit is brought. Such a conclusion, it seems to us, demonstrates the impropriety of the assumption. The rule is universal that fraud will never be presumed. It must always be proved, either by direct and positive evidence, or by proof of circumstances from which it is fairly and reasonably to be inferred. It will never be adjudged against a party upon facts which are assumed, but not proved. We are of opinion, therefore, that, on the case as it stood when the plaintiff rested, the direction of a nonsuit was proper.

The plaintiff further contends that its failure to make a case that entitled it to go to the jury was due to erroneous rulings of the trial court, excluding evidence which tended to show the liability of the defendant.

A part of the excluded evidence was offered for the purpose of showing the probability of breaks existing in the water mains upon the defendant's property, due to its negligence, and the consequent loss of water as the result of such breaks. The suit being upon a contract for water sold and delivered to the defendant at an agreed upon price, testimony showing a right in the plaintiff to recover damages from the defendant for the negligent performance of an alleged duty which the latter owed to the former (conceding that such duty existed), had no bearing upon the matter in issue, and was properly excluded because of its immateriality.

Other excluded evidence was that of experts called to express their opinions as to the conclusions to be drawn from the variations in the readings of the two sets of meters, and the fluctuations in those readings, which sometimes showed a greater, and sometimes a less, quantity of water unaccounted for by the twenty-three meters in the defendant company's plant. But expert opinion is valueless unless it is rested upon the facts which are admitted or are proved. The questions put to the experts in this case assumed that the avenue I and the barrel factory meters accurately registered the volume of water which passed through them, a fundamental fact which, as we have already stated, was neither admitted nor proved. The ruling of the trial court excluding this line of testimony was, therefore, proper.

The trial court also refused to admit in evidence the note-books of meter readers showing the results of their readings during the period covered by this litigation, or to permit Mr. Hickey, the water registrar, to read from them. The persons who transcribed the readings into these books were not called to identify them or to prove their accuracy. The theory of the plaintiff seems to be that they proved themselves. This theory we incline to think unsound. See *Lindenthal* v. *Hatch,* 32 *Vroom* 29. But, assuming the contrary, they were

not evidential against the defendant, for the reason stated in the earlier part of this opinion, and for this reason they were properly rejected.

The plaintiff further complains that an offer to show that no change or repairs to the avenue I meters were made at any time after their installation was improperly excluded. The purpose of this offer was to show that these meters were in repair. But it does not at all follow that, because they were not repaired, they did not need repair; and this is particularly so in view of the testimony of Mr. Hickey that all meters get out of order at times. The rejected offer did not carry with it any suggestion that the meters had been examined and found to be apparently in good order. On the contrary, it was equally fair to infer from it that no examination, much less a test, had ever been made of either of the meters at any time after their installation. This offer was, therefore, properly refused.

The other errors assigned upon the exclusion of evidence are disposed of by what has already been said.

The judgment under review will be affirmed.

*For affirmance*—The Chief Justice, Garrison, Swayze, Bergen, Voorhees, Minturn, Vredenburgh, Vroom, Dill, Congdon, JJ.   10.

*For reversal*—The Chancellor, Trenchard, Parker, Bogert, JJ.   4.