[OCTOBER TERM, 1921]

## SNEIDER v. BIG HORN MILLING CO.
### (No. 1021; Decided October 3, 1921; 200 Pac. 1011)

EVIDENCE—ADMISSIONS, HOW PROVED—STATUTE OF FRAUDS—PART-
NERS—FINDINGS—ESTOPPEL—BOOKS OF ACCOUNT AS EVIDENCE—
EXTENSION OF CREDIT—PRESUMPTION AS TO ARRANGEMENT FOR
CREDIT—TRIAL—MOTIONS BY BOTH PARTIES FOR DIRECTED VERDICT
TRANSFERS FUNCTIONS OF JURY TO THE COURT—APPEAL AND ERROR
—FINDING OF COURT AFTER BOTH PARTIES MOVED FOR DIRECTED
VERDICT NOT DISTURBED UNLESS CLEARLY AGAINST WEIGHT OF EVI-
DENCE.

1. Testimony of admissions made by a party to the action is
   primary evidence.
2. Admissions by a party may be proved by any competent
   witness who heard them, including the party who made
   them, who may be asked directly in regard thereto.
3. To satisfy Comp. St. 1920, §§ 4719, 4726, declaring an oral
   contract for sale of goods of the value of $50 unenforce-
   able unless the buyer accepts and receives part of the
   goods, it is not necessary to show by evidence distinct
   from a prior oral contract of sale to a partnership that a
   delivery pursuant thereto to one of the partners was to
   him as partner.
4. Finding that delivery of goods sold was to defendants as
   partners, and not to a corporation, *held* warranted by the
   evidence.
5. If one holds himself out as a partner in a firm then exist-
   ing or commencing and obtains extension of credit to the
   partnership on the strength thereof, he is estopped to
   claim, as against liability for goods furnished, that he
   was not a partner.
6. Plaintiff's books of account showing that credit was ex-
   tended to defendants as partners are admissable to show
   who were the actual purchasers.
7. Testimony of plaintiff's manager in an action for price
   of goods sold that credit was extended at all times only
   to the partnership composed of defendants is admissable
   to show the intention of the parties in regard thereto.
8. Where defendants arranged with plaintiff for credit for
   themselves as partners, and shipments were made to them
   as such, the presumption of the continuance of the ar-
   rangement, rendering defendants liable for future ship-

ments, obtains in the absence of evidence to the contrary, though on defendants' letter heads there then appeared a fanciful name, under which name plaintiff supposed that they were then doing business, for which reason it thereafter made shipments in that name; it not being informed by the letter heads of any termination of the partnership and transfer of the business to a corporation.

9. By both parties moving for a directed verdict, without at any time before or after the ruling of the court thereon asking that the jury pass on a question of fact, they waived the right to have a jury pass on a question of fact, and transferred its functions to the court.

10. Where on motion by both parties for a directed verdict the court makes a finding of fact, it will not be disturbed by the reviewing court unless clearly against the weight of evidence.

ERROR to District Court, Park County, HON. PERCY W. METZ, Judge.

Action by the Big Horn Milling Company against Joseph Sneider and another, individually and as partners under the firm name of Sneider & Wallace. There was a judgment for plaintiff and defendants bring error. The material facts are stated in the opinion.

*Fred Wycoff* and *E. E. Enterline,* for plaintiff in error.

The court erred in receiving any evidence concerning an oral agreement between plaintiff and Sneider and Wallace for the sale of goods referred to in the petition, the transaction being within the statute of frauds. (Comp. Stats. 1910, Sec. 3752; Laws 1917, Sec. 4, pages 140-141.) Both statutes were relied upon at the trial, Section 3752, supra, having been enforced until the Uniform Sales Act in 1917; Section 3752 was construed in this court in Williams-Hayward Shoe Company v. Brooks, 9 Wyo. 424 where it was held that before the buyer is held liable for a purchase of goods in excess of $50.00 he must either accept and receive part of the goods or sign some note or memorandum in writing, neither of which were shown by the evidence in the case at bar. The court erred in permitting the examination

of defendant Wallace with reference to his testimony previously given in a deposition. The statutes prescribe a method of impeachment in proper cases. (Section 4540 Comp. Stats. 1910.) The corporate character of Stone Front Grain Company was not questioned by the pleadings and testimony offered in denial thereof should have been excluded; corporations may contract irrespective of the issuance of stock. (Comp. Stats. 1910, Sections 3966-3975.) Of course directors of a corporation are personally liable for indebtedness in excess of its capital stock. (Comp. Stats. 1910, Section 3992.) Authorities cited in support of the contention that prior to the issuance of stock promoters of the corporation are liable as partners, will be found to be governed by statutes peculiar to the forum. This is true in the case of McVicker v. Cone which followed Section 32 of Hills Oregon Code, also true of the case of Walker v. Oliver, (Kans.) and Murdock v. Lamb. The corporation involved in Central National Bank v. Sheldon as shown by the evidence never was incorporated. The verdict is not sustained by the evidence. There is no evidence that Sneider and Wallace were partners. The evidence was insufficient to authorize the court to grant the plaintiff a directed verdict. The judgment should be reversed and the cause remanded.

*Brome & Hyde,* for defendant in error.

Sneider and Wallace solicited credit as partners and it is contended that in as much as they filed a certificate of incorporation after a portion of the goods had been shipped, they, as partners or individuals should escape liability in this action. Irrespective of the corporation, Sneider and Wallace are liable for the purchase price under the evidence. When a purchaser of goods, under an oral contract, procures another to receive and accept goods thus bargained for, without the knowledge of the seller he exercises such control over the goods as to eliminate the statute of frauds in a defense in a suit for the purchase price. The original contract applied to all of the goods. The first two

shipments were consigned to Sneider and Wallace and their acceptance of the goods takes the contract out of the statute of frauds. (Davis v. Moore, 13 Me. 424; Rickey v. Tenbroack, 63 Mo. 563; Myer v. Thompson, 16 Ore. 194; Fanner v. Gray, 16 Neb. 401.) Sneider and Wallace claim that they did not accept the goods but received them for the Stone Front Grain Company, a corporation. The evidence shows that the organization of this corporation was never completed. The statutes were not fully complied with in the attempted organization of this company. Hence Sneider and Wallace could not escape liability by transacting business in its name. (Central National Bank v. Sheldon, 121 Pac. 340; McVicker v. Cone, 28 Pac. 76 (Ore.); Aspen W. & L. Co. v. City, 37 Pac. 728.) Unless the statute authorizes transaction of business by a corporation before its stock is subscribed, it cannot lawfully proceed with the main designs of its organization before it is subscribed. (Swesy v. Hotel Co., 5 Neb. 50.) Even if a bona fide corporation had been formed to which goods had been turned over and used, it would not absolve the partners who made the original purchase. (Reed v. Crelins Co., 125 Cal. 117.) Examination of defendant Wallace with reference to admissions theretofore made by him in a deposition as to the receipt and acceptance of the goods involved in the suit was proper, even though the witness be present at the trial; that fact would not prevent proof of an admission made by him in a deposition taken in the case. An admission may be proved by any person who heard it. (Cyc. Vol. 16, pg. 1037.) Surely if an admission be provable by a third person it should be provable by the witness himself. The judgment should be affirmed.

BLUME, Justice.

The parties will be hereinafter referred to in the same order as in the court below. The plaintiff sues the defendant for a balance of $3668.91 and interest for goods sold and delivered to defendants commencing with January 30, 1917, to and including June 30, 1917. Plaintiff is a cor-

poration located at Basin, Wyoming, engaged in the milling business. The evidence shows that about January 1st, 1917, defendant Sneider wanted to make arrangements with plaintiff, through one J. W. Alexander, an employe of plaintiff, for an extension of credit to Sneider and Wallace in connection with the feed business. Alexander referred him to the manager of plaintiff. About January 10th, 1917, N. J. Long, manager of the plaintiff, accordingly had a conference with the defendants at Thermopolis, Wyoming, during which the defendant, Sneider, in the presence of defendant Wallace stated that they, the defendants, were going into business (at Thermopolis) to sell flour and feed in a building owned by Sneider; that defendant Wallace had had experience but had no money, and that they wanted to arrange to buy goods of plaintiff and asked for extension of credit to the firm. To this plaintiff, through its manager, agreed on the strength of the responsibility of the defendant Sneider. During the conversation nothing whatever was said as to the formation of a corporation by defendants. All orders for goods seem to have been given either by telephone or in writing by defendant Wallace, but none of the written orders could be found. The first order for $744.12 was shipped on January 30, 1917; the second, for $1895.95 on February 10, 1917. Both of these orders were billed to defendants in the name of Sneider and Wallace. Subsequent orders, eight in number, were billed in the name of Stone Barn Grain Company. This change in the name in which the goods were billed was made, as stated by the manager of plaintiff, because the defendants in the meantime had used printed stationery reading: ''The Stone Barn Grain Company, Incorporated,'' but that all sales were in fact made to Sneider & Wallace in accordance with the talk at Thermopolis, and that credit was extended only to Sneider & Wallace. The various shipments were put on board of the railroad cars at Basin, billed to Thermopolis, and actually received, at least, by defendant Wallace in *some* capacity, except one car delivered to another party

at the request of Wallace. It will not be necessary to refer to this one car again, but will for convenience be considered as delivered the same as the other cars. Four payments were made on the shipments from time to time; one for $800 and three for $500 each, and a further credit given on July 14, 1917, of $1094.03 by reason of a car of oats turned over by defendants to plaintiff. In the month of June, 1917, defendant Sneider had a conversation with witness Alexander, and on July 10, he had another with plaintiff's manager. Both of these conversations were to the effect that he had more business than he could manage; that he was going out of the feed business and turn it over to de-defendant Wallace, and wanted to know whether from that time on plaintiff would rely solely on the credit of Wallace. An amount of $50.00 due for shipment previously made was on the latter date arranged with him to be debited to the account of Wallace instead of the old account. On July 14th defendant Wallace told plaintiff's manager that defendant Sneider had left the firm on July 10. Subsequently, upon statement and request of Mr. Sneider, the credit for the car of oats was changed from the account of Wallace to that of the old account. The books of accounts of plaintiff, properly identified, were introduced in evidence, showing credit extended in the manner as above mentioned. Defendant Sneider did not take the witness stand. Plaintiff offered the deposition of defendant Wallace, and upon that being excluded, called him as a witness. He admitted that he had, at the time when the deposition was taken, testified that the various shipments had been received by him. Upon cross-examination, he testified that all the orders he gave and all business done by him were for and on behalf of the Stone Front Grain Company, and that the goods were not received and accepted for or on behalf of himself or Sneider & Wallace. On re-examination he produced the bills of shipment made on January 30 and February 10th which show that the goods were billed to Sneider & Wallace. He stated further that the Stone Barn

Grain Company was not a corporation; that the letter heads and checks were in that name instead of in the name of the Stone Front Grain Company, a corporation, by mistake. It appears that this corporation had no stock subscribed or paid for. The only evidence introduced by defendant was the certified copy of articles of incorporation of the Stone Front Grain Company filed in the office of the Secretary of State of Wyoming, on February 2nd, 1917, accompanied by a certificate stating that a certificate for resident agent and proof of publication of notice of the articles of incorporation were duly filed on March 2nd, 1917. At the close of the testimony both the defendants and plaintiff moved for a directed verdict. The court directed the jury to return a verdict for plaintiff for $4374.11, which was accordingly done and judgment entered thereon. A motion for new trial filed was overruled, and the case is here on petition in error.

1. The defendants allege as error the method of examination of the defendant Wallace. His deposition had been excluded upon protest by defendants, and he was then called and asked whether at the time of the taking of the deposition he had not made certain statements—all relating to the receipt of the various shipments of goods. Counsel for defendants contend that the witness, like any other witness, should have been asked to testify to the transactions directly, rather than relative to the statements that he had made. While we see no advantage gained by counsel for plaintiff in eliciting the testimony in the manner in which they did, it was not improper to do so. Testimony as to admissions made by a party to the suit is primary evidence, and such admissions may be proved by any competent witness who heard it. (22 C. J. 410.) The defendant Wallace was a competent witness. He was asked the same questions that any other witness would have been asked, except only that they were made to conform to the fact that he himself made the admissions, and except, further, that they were leading. Being a competent witness,

it was perfectly proper to call him to the witness stand and ask him to testify to these admissions. (Reed v. Rice, 25 Vt. 171; Miller v. Wood, 44 Vt. 378; Wilcox v. Green, 28 Conn. 572.) In a note to Reed v. Rice, supra, it is said:

"It has sometimes been said, that you cannot show the admissions or declarations of a party, who is himself a competent witness in the case, but must call him as a witness. But we apprehend there is no soundness in this declaration. If the admissions of a person are competent evidence in a case, it is not important how they are shown. It may be by writing, under the hand of the party, or by a witness, who heard them made, or both, or the party himself may be called. And if called, and does not recollect the admission, or if he denies making them, they may still be shown by other testimony. All that can in any case be made out of the party omitting to call the person, making the admissions, to prove them, is merely one of presumption or argument. The omission to call the very person making the admissions, when he is a competent witness, is always liable to remark, and will weigh more or less, according to circumstances. But this is all which can be justly objected against such course. If the admissions are themselves evidence, it matters not how they are shown, so it be satisfactory to the triers, to show they were in fact made."

2. Counsel for the defendants contend that the arrangements made at Thermopolis on January 10th, 1917, constituted such a contract as was within the statute of frauds, and that the evidence in regard to them was inadmissible, relying upon sections 4719 and 4726 of the statutes providing in substance, among other things, that an oral contract for the sale of goods of the value of $50.00 is not enforceable unless the buyer accepts and receives part of the goods. They do not contest the rule that a delivery, or partial delivery and receipt and acceptance of the goods, takes the case out of the statute. (See Berry v. Summers, 13 Okl. 425, 130 Pac. 152, also note to 11 Ann. Cas. 517, 20 Cyc. 247.) No contention is made, and it could not well be, that

the goods were not actually delivered to, and received and accepted by, Wallace in *some* capacity. They contend, however, that there is no evidence in the case that he received the goods in his capacity as partner, or in his individual capacity, but that it is shown that he received and accepted them in his capacity as manager of the Stone Front Grain Company. In other words, they seem to contend, if we understand them correctly, and their objection must mean, that, in order to satisfy the statute of frauds, it is necessary to show by evidence entirely distinct from any previous contract, authority or order, that the delivery in this case was made to the defendants in their capacity as co-partners. They cite no authority on this point. An implied contract to pay may, of course, arise from delivery, receipt, acceptance and retention of goods, and counsel evidently are under the impression that in the absence of a memorandum in writing, such an implied contract is the only one that can be relied on in a case like this. In any event that is the effect of their contention. If such were the law, failure of justice would result in a large number of cases. In such event, responsibility could never be fastened for instance upon a person ordering goods to be delivered to a third party. The contention, however, is not warranted. The statute refers to and contemplates the existence of prior oral contracts, but, in order to prevent perjury, provides that they shall not be enforceable, except only under the conditions mentioned, namely, delivery of the goods to the buyer, and receipt and acceptance thereof. It imposes upon the party suing thereon the necessity of not alone proving the oral contract, but also that it has been ratified or performed by receipt and acceptance of the goods, and puts, accordingly, a substantial obstacle in the way of false swearing. (Brown, St. Frauds, (5th Ed.) 316b.) In the case of Marsh v. Hyde, 3 Gray 331, the court said:

"It is to be borne in mind that, in all cases where there is no memorandum or note in writing of the bargain, the

verbal agreement of the parties must be proved. The statute does not prohibit verbal contracts. On the contrary, it presupposes that the terms of the contract rest in parol proof, and only requires, in addition to the proof of such verbal agreement, evidence of a delivery or part payment under it. It does not therefore change the nature of the evidence to be offered in support of the contract.''

The test, in a case like that at bar, is as to whether there has been shown an oral contract, and a delivery, acceptance and receipt pursuant thereto. If these facts appear, then the requisites of the statute are fulfilled. (Marsh v. Hyde, supra; Pinkham v. Mattox, 53 N. H. 600; McMillan v. Heaps, 85 Nebr. 535, 123 N. W. 1041; Hinchman v. Lincoln, 124 U. S. 38, 54; 8 Sup. Ct. 369; Brown, supra., § 337; Williston on Contracts, § 540.) If there is a contract for delivery of goods, and a subsequent delivery thereof is made, and the goods are received and accepted by the purchaser, then the conclusion may be warranted, that delivery was made pursuant to the contract. So, if a contract is made with a partnership, and a delivery is made to one partner, accompanied or followed by receipt and acceptance of the goods, then, too, the same conclusion may be warranted, because delivery to and acceptance by one partner is a delivery to and acceptance by the partnership. (Blumenthal v. Greenberg, 130 Cal. 384, 62 Pac. 599; Adler v. Wagner, 47 Mo. App. 25; Williston on Contracts, § 548.) In the case at bar, defendants seek to deprive plaintiff of the very means of proof which the statute of frauds contemplates and provides as at least part of the means by which a sale may be taken from out its operation. That cannot be done. All the facts and circumstances tending to identify and fasten responsibility upon the real purchaser, his relationship to the party to whom the goods are delivered, and the capacity, individual or otherwise, in which the defendant made the contract are admissible in evidence. (35 Cyc. 567; Botefuhr v. Rometsch, 34 Or. 491, 56 Pac. 808; Blumenthall v. Greenberg, supra; Munroe v. Mundy & Scott,

164 Ia. 707; 146 N. W. 819); (see also Rothschild v. Kennedy, 86 Or. 566, 169 Pac. 102; Caldwell v. Glazier, 138 App. Div. 826, 123 N. Y. S. 622; Cotton Co. v. Lee (Ala.) 72 So. 158.) Bearing in mind that delivery to a partner is a delivery to the partnership, the language of the court in Munroe v. Mundy & Scott, supra, where a similar contention as here was made, is apropos. There the court said:

"The appellee moved to strike from the record the testimony of Munroe, the appellant, as to the alleged sale of the team, for the reason that no part of the consideration was paid, and there was no delivery of the team. This objection is based upon the first division of Code Sec. 4625, being the statute of frauds. It, of course, will not be claimed that, if Mundy & Scott purchased the team for themselves, and that delivery was not made to them until several days after the contract was entered into, proof of the contract, to sustain a recovery against them, must be in writing. It is only when no part of the purchase money has been paid, and no part of the property delivered, that the rule has application."

3. The next contention of defendants is that the court should have directed a verdict in their favor, for the reason that it is shown by the undisputed evidence that delivery of the goods was made to the Stone Front Grain Company, a Corporation, and not to defendants. The force of this contention is considerably weakened by reason of our determination that the testimony regarding the arrangements made on January 10th, and regarding the statements of defendants then made is admissible. We do not think the point well taken, but, on the contrary, think that there was sufficient evidence to warrant a finding for defendants. As we stated before, delivery to and acceptance by a partner is delivery to and acceptance by the partnership. A person may be liable to a third person if he is an actual partner of another or holds himself out as such. If a person holds himself out as a partner of another and credit is extended to the partnership on the strength there-

of, he is estopped from claiming that he is not in fact a
partner. (30 Cyc. 390. Gershner v. Scott, 93 Ark. 301,
124 S. W. 722.) Nor is it always necessary that such hold-
ing out shall be as to a partnership then actually existing
or operating. (Lake v. Duke of Argyll, 6 Q. B. 477; 115
Engl. Reprint 178; Battley v. Lewis, 1 Men. & Gr. 155, 133
Engl. Repr. 286; Stiles v. Meyer, 64 Barb. 77, 7 Lans. 190.)
In the last case, Meyer was to become a future partner and
with that understanding credit was extended to the part-
nership. The court said:

"The question is, whether the facts found establish a
legal liability against Meyer. We think they do, for the
reason that he was a party to the contract of purchase of
the goods. The credit was given to the individuals who
were to become members of the proposed partnership; and
this was done with the express assent of Meyer. Although,
therefore, the agreement was that the partnership should
not commence until some time after the purchase, and the
agreement was never carried out, yet the purchase itself
was a *quasi* partnership transaction; and having been ex-
pressly sanctioned by Meyer, he is estopped from disputing
his liability."

In the case at bar, the evidence shows without dispute
that there was at least a holding out by both defendants as
to a partnership in future. In fact, we think that it may
be said that the holding out was as to a partnership then
existing, or at least, as to one then commencing. The de-
defendants stated on January 10th, 1917, that they were
going to be associated together in the feed business, wanted
to buy goods from plaintiff for that purpose, and desired an
extension of credit. Now it is often necessary for a part-
nership to arrange for the purchase of goods and for an ex-
tension of credit; to do so is frequently one of its important
business transactions, and when goods are subsequently
bought and credit extended pursuant to such arrangement,
it may well be said that the proof thereof shows an actual
working partnership or at least the commencement thereof.

Let us then first direct our main attention to the first two shipments. Twenty days after the foregoing arrangements were made, plaintiff made the first shipment of goods to the firm of Sneider & Wallace, which was received by Wallace. The Stone Front Grain Company was not then incorporated. No credit could have been asked for or extended to it at that time. A second shipment was made to the same firm and received about February 10th. The goods were delivered to a common carrier for the purchaser, and this constituted a receipt of the goods, though not an acceptance. (Williston on Contracts, §§ 548, 556.) Invoices or bills showing these two shipments as so made were also sent and received. During this time nothing had been said to plaintiff concerning any corporation, and no notice of any kind, changing the arrangements made on January 10th appears to have been given to plaintiff. The books of accounts of the plaintiff were introduced in evidence. These showed that credit was extended to defendants as co-partners, and they were admissible for the purpose of showing who were the actual purchasers (35 Cyc. 43) and in connection with the other evidence in the case, that delivery was made. (Cascade L. Co. v. Ind. Co., 56 Wash. 503, 106 Pac. 158; Ducoign v. Schreppel, 1 Yeates (Pa.) 347; Curran v. Crawford, 4 S. & R. (Pa.) 2; Cargill v. Atwood, 18 R. I. 303, 27 Atl. 214; Rush v. Hance, 3 N. J. L. 630; Bayonne v. Standard Oil Co., 81 N. J. L. 717, 78 Atl. 146; Benoliel v. Homac, 87 N. J. L. 375, 94 Atl. 605; Eatman v. Moulton, 2 N. H. 156; Bailey v. Harvey, 60 N. H. 152; Schmidt v. Scanlon, 32 S. D. 698, 144 N. W. 128, 22 C. J. 862; See also Lewis v. England, 14 Wyo. 128, 82 Pac. 869; Dear v. Tracy, 1 Wyo. 393.) The manager of plaintiff testified that credit was extended at all times only to the partnership, and this evidence was admissible for the purpose of showing the intention of the parties in regard thereto. (Hale Bros. v. Gibbs, 43 Ia. 380; Maher v. Wilson, 3 N. Y. S. 80.) The statements of Sneider in June and July that he wanted to leave the *concern* or *firm;* the statement of

Wallace about July 14 that Sneider had left the *firm* on July 10; the talks in regard to the extension of future credit to Wallace alone, and the arrangements of credits on the old account instead of the new, each and all can be explained on no other theory than that up to that time the defendants had been co-partners in connection with the old accounts that had then accrued, and that they recognized them as valid. Besides, no transfer or change of accounts was necessary if the business was done by the corporation, even though one of the stock-holders or person interested therein severed his connection therewith. We think that this evidence was sufficient to justify the lower court in finding that the defendants were co-partners as to the first two shipments, which we have mainly considered so far, and that these two shipments were made, received and accepted pursuant to the arrangements made on January 10th. Now, the evidence as to the remaining shipments is substantially the same or of the same effect as that in connection with the first two shipments, with the exception of the testimony in regard to the Stone Barn Grain Company and the Stone Front Grain Company, and our finding must be the same as that in reference to the first two shipments unless the latter evidence would change it. The shipments other than the first two were made in the name of the Stone Barn Grain Company, on the supposition of plaintiff, as testified to by the witness Long, that defendants were doing business under that name, and that, by making these shipments in that manner, would be convenient for the defendants. The books of accounts of plaintiff, in view of this explanation, were still admissible in evidence in regard to the shipments. (Schetter v. Jones, 20 Wis. 433, 437; Mitchel v. Belknap, 23 Me. 475; Hartley v. Brooks, 6 Whart. 188; Church v. Davis, 9 Watts. 304; Williamson v. Fox, 38 Pa. 214; Eddy v. Church, 118 N. Y. S. 795.) And where a partnership is shown to exist, the presumption is that it continues until dissolution is shown; (30 Cyc. 403; Lellman v. Mills, 15 Wyo. 149, 173, 87 Pac. 985.) So, after it appeared in evi-

dence in this case that defendants had engaged in business as partners up to and including February 10th, the time of the second shipment of goods, and that credit was extended to them as such, then the burden was on the defendants and not the plaintiff to show that they were absolved from liability as partners for their subsequent transactions, and that a corporation was liable therefor instead. (Harrill v. Davis, 168 Fed. 187; Owen v. Shepherd, 59 Fed. 746; 8 C. C. A. 244; Wechselberg v. Bank, 64 Fed. 90; 12 C. C. A. 56; Clark v. Jones, 87 Ala. 474; 6 So. 362.) In the first of these cases it was said:

"The general rule is that parties who associate themselves together and actively engage in business for profit under any name are liable as partners for the debts they incur under that name. It is an exception to this rule that such associates may escape individual liability for such debts by a compliance with corporation laws or by a real attempt to comply with them which gives the color of a legal corporation, and by the user of the franchise of such a corporation in the honest belief that it is duly incorporated. When the fact appears, as it does in the case at bar, by indisputable evidence that parties associated and knowingly incurred liabilities under a given name, the legal presumption is that they are governed by the general rule, and the burden is upon them to prove that they fall under some exception to it."

The burden has not been sustained by defendants. No notice of any kind appears to have been ever sent that plaintiff could no longer rely upon the arrangements made on January 10th. There is nothing to show that the partnership was ever dissolved, that notice of dissolution was given, or that the business of the partnership was transferred to the Stone Front Grain Company. The Stone Barn Grain Company was not a corporation; it was nothing but a name under which defendants conducted their business; the letter-heads of defendants containing that name did not convey information that the Stone Front Grain Company was

doing business; it does not appear that during the time of any of the shipments plaintiff even heard or knew of such corporation. The corporation had no capital stock subscribed or paid for. Its directors mentioned in the certificate of incorporation were not stockholders as required by § 5051 of the statute. In fact there is no evidence that the corporation ever engaged in any business whatever, except only the testimony of Wallace, given many months after these transactions, that he acted as manager thereof in connection with the orders and shipments in question, without showing that the plaintiff had any knowledge of what appears to have been his secret intentions at the time. Such secret intentions cannot transfer liability from a partnership to a corporation. We need not, therefore, determine the question as to what constitutes a *de facto* corporation in this state. In the case of Goodwin v. Smith, 23 Ky. L. 1810, 66 S. W. 179, a case where the defendant tried to show that the plaintiff was in the employ of a corporation the court said:

"There is nothing to show that the partnership business was settled, or that an inventory was taken of the property of the corporation, or even that the stock of the corporation had been paid for. According to the proof, the most that can be said in favor of the corporate proposition is that the partners had determined to merge the firm, with its assets and liabilities and the partners' holdings, into a corporation, with the same relative position among themselves. But it is not pretended that any knowledge or information of this change was actually given to appellee or to other employes. Under the proof the court would not be authorized to say as a matter of law that appellee was employed by a corporation of whose existence he had not learned. There was no contract of employment entered into on May 15, 1900. The old contract simply continued, and appellee went to work as usual. He had been engaged by the partnership, and had neither been discharged or re-employed. Appellee was therefore in the employ of the partnership,

and not the corporation. In, the absence of proof of a dis-
solution of the partnership and an assumption of that busi-
ness by the corporation, the court was not authorized to
say that the organization of a corporation in Hardin coun-
ty, by the partners, to engage in the same business as the
partnership, would operate as a dissolution of the partner-
ship existing in Hart County or anywhere.''

(See also The Christian, etc. Grocery Co. v. Fruitdale L.
Co., 121 Ala. 340; 25 So. 566; Ward Fruit Co. v. Bryan &
Lamb, 144 Ga. 769, 87 S. E. 1037; Provident Bank & T. Co.
v. Saxon, 116 La. 408, 40 So. 778.)   Accordingly, we think
that our finding on the last shipments must be the same as
that in regard to the first two shipments.

Counsel for defendants contend, that, in view of the tes-
timony of the defendant Wallace that he ordered the goods
shipped and did business as manager of the corporation,
it became a question of fact for the jury as to who received
and accepted the goods in question.   However that might
be under other circumstances, it appears in this case that
each party, at the close of the testimony, asked the court
for a directed verdict, without at any time, before or after
the ruling of the court thereon, asking that the jury pass
upon any questions of fact.   By this course they waived
the right to have the jury pass on any question of fact, and
transferred its functions to the court.   A finding of fact
by the court made under such circumstances should not be
set aside by a reviewing court unless clearly against the
weight of the evidence.   While this point has never been
passed on by this court, and counsel have not called it to
our attention, we find this to be the rule in the Federal
courts, and the prevailing rule in the State courts.   (Empire
State Cattle Co. v. R. Co., 210 U. S. 1; 52 L. Ed. 931; Fifty
Asss. Co v. Quigley, 56 Mont. 348; 185 Pac. 155; Butcher
v. Butcher, 21 Colo. App. 416, 122 Pac. 397; City of Dead-
wood v. Hursh, 30 S. D. 450, 138 N. W. 1122; Howell v.
Bowman, 89 Nebr. 389, 131 N. W. 597; Perkins v. Com-
missioners, 88 O. S. 495, 103 N. E. 377; Koehler v. Adler,

78 N. Y. 287; Stanford v. McGill, 6 N. D. 536; 72 N. W.
938; Deeter v. Burk, 107 Ind. App. 449, 107 N. E. 304;
Home Sav. Bank v. Woodruff, 14 N. M. 502, 94 Pac. 957;
Conkling v. Knights & Ladies, (Ia.) 166 N. W. 384; Sevier
v. Hopkins, 101 Wash. 404, 172 Pac. 550; Patty v. Flour-
ing Mills, 53 Or. 350, 96 Pac. 1106, 98 Pac. 52, 100 Pac.
298, 26 R. C. L. 1080.)   The reasoning of these cases com-
mends itself to our view.

There is, in our judgment, sufficient evidence to sustain
the finding of the court below.   The judgment herein ac-
cordingly should be, and is, affirmed.

*Affirmed.*

Potter, C. J., and Kimball, J., concur.