[Civ. No. 4364.  Second Appellate District, Division One.—January 15, 1925.]

## M. A. CAREAGA, Appellant, v. MARY THERESA MOORE et al., Respondents.

[1] FRAUDULENT CONVEYANCES—INTENT OF GRANTOR—PLEADING—EVIDENCE.—In an action to set aside a certain transfer made by a husband to his wife on the ground that the same was fraudulent and void as to plaintiff, a creditor of the husband, the allegation in the complaint to the effect that the conveyance was made by the husband "with the intention to injure, delay and defraud creditors" demands that the evidence tending to establish that fact, or those facts, at least preponderates over the evidence or the presumption to the contrary.

[2] ID.—PRESUMPTION OF INNOCENCE—REBUTTAL.—In such an action, the innocence of the act of the husband in transferring the property in question to his wife will be presumed, and such presumption will continue until the guilty intent has been established beyond a reasonable doubt; and while the same degree of proof as to a criminal tendency will not prevail in a civil action grounded on fraud, the rule requiring that where fraud is alleged it must be clearly proven to the satisfaction of the court should obtain.

[3] ID.—CONFLICTING EVIDENCE—DISCRETION OF TRIAL JUDGE—APPEAL. In such an action, the effect and value of the evidence is for determination by the judge of the trial court; and where the evidence is conflicting, the decision of the issue involved rests within the discretion and sound judgment of such judge and cannot be disturbed except where it manifestly appears that such discretion has been abused.

[4] ID.—SOLVENCY OF HUSBAND—INTENT—EVIDENCE—FINDINGS—APPEAL.—In this action to set aside a certain transfer made by a husband to his wife on the ground that the same was fraudulent and void as to plaintiff, a creditor of the husband, the question of the alleged fraudulent intent of the husband in making the conveyance in question not having been clearly shown by reason of his insolvency at or about the time the conveyance was made, or by reason of any other fact adduced in evidence, and there being some evidence, however slight, from which his solvency

---

1.  Transfers between husband and wife as in fraud of creditors, notes, 19 Am. St. Rep. 657; 20 Am. St. Rep. 715; 90 Am. St. Rep. 497.  See, also, 12 R. C. L. 668; 12 Cal. Jur. 1057.

2.  Sufficiency of proof of fraud, notes, 65 Am. Dec. 157; 11 . Am. St. Rep. 757.  See, also, 12 R. C. L. 671; 12 Cal. Jur. 1062.

at such time might be inferred, the conclusion reached by the trial court that the husband was not "in straitened circumstances or heavily or at all indebted at the time he executed said deed of grant" to his wife "and that said deed was not made with the intention to injure or delay or defraud" his creditors, was supported by the evidence, and plaintiff's contention to the contrary could not be sustained on appeal.

[5] ID. — FRAUDULENT INTENT OF HUSBAND — KNOWLEDGE OF SUBSEQUENT GRANTEES—EVIDENCE—FINDINGS.—In such action there was substantial evidence to sustain the findings of the trial court relating to the question of knowledge on the part of certain defendants who claimed under the wife of the alleged fraudulent intention of the husband in making the conveyance in question; but the evidence having been sufficient to sustain the finding to the effect that no fraud was practiced by the husband in making the deed to his wife, the question of the sufficiency of the evidence to sustain the other findings became immaterial.

[6] ID.—EVIDENCE—IMPROPER OBJECTION — CORRECT RULING.—In such action, the trial court having ruled correctly in rejecting certain oral testimony relating to a certain contract between the witness and the husband, it was immaterial whether the best objection to such testimony was made, or whether any objection was made.

[7] ID. — INTERRUPTION OF WITNESS — CONTINUATION OF ANSWER TO PREVIOUS QUESTION.—In such action, the trial court did not err in denying plaintiff's motion to strike out certain testimony on the ground that it was not responsive to the question which had been asked, where the matter to which objection was made was a continuation of the answer of the witness to a previous question, in which answer the witness had been interrupted by a later question asked for the apparent purpose of explaining a part of the answer already made.

[8] ID. — OPTION TO PURCHASE PROPERTY — IRRELEVANT EVIDENCE — LACK OF FOUNDATION.—In such action, the trial court did not err in granting a motion to strike out certain testimony regarding an option which one of the attorneys for the defendants had given to purchase the property in question, where no sufficient foundation was laid for the introduction of any evidence relating to the option, and where, even though the evidence had been permitted to remain in the case, it would not have affected the one vital question as to whether or not the deed from the husband to his wife was made for the purpose of injuring, delaying, or defrauding the creditors of the husband.

(1) 27 C. J., p. 795, n. 93, p. 820, n. 12.   (2) 16 C. J., p. 534, n. 37, p. 536, n. 75; 27 C. J., p. 819, n. 8, p. 821, n. 30.   (3) 4 C. J., p. 901, n. 1; 27 C. J., p. 868, n. 94.   (4) 27 C. J., p. 829, n. 14, p. 834, n. 52 New.   (5) 4 C. J., p. 651, n. 53.   (6) 4 C. J., p. 662, n. 86, p. 663, n. 92.   (7) 4 C. J., p. 1002, n. 41.   (8) 4 C. J., p. 1004, n. 64; 38 Cyc., p. 1350, n. 3.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

Richards, Heaney & Price and A. C. Postel for Appellant.

Harry W. T. Ross, Frank L. Rabe and William G. Griffith for Respondents.

HOUSER, J.—The purpose of the action herein involved is to obtain a decree of court setting aside as fraudulent and void, first, a deed to certain real property comprising 268 acres of land, made by one Thomas W. Moore to his wife, Mary Theresa Moore, who is one of the defendants; secondly, a deed covering the same property, made by said Mary Theresa Moore to defendants Fox; thirdly, a mortgage likewise conveying the same property, executed by defendants Fox to Santa Barbara Trust and Savings Bank and assigned to the defendant Commercial Trust and Savings Bank; and, finally, to have said property declared a part of the assets of the estate of Thomas W. Moore, deceased, so that it may be used in payment of plaintiff's allowed claim of $12,209.25 against said estate.

The property in question was formerly a part of a much larger tract of land belonging to Thomas Hope, now deceased, and who was the father of defendant Mary Theresa Moore and her brother James C. Hope. On the death of Thomas Hope, defendant Mary Theresa Moore and James C. Hope each succeeded to an undivided one-twelfth interest in the estate of the father Thomas Hope. On May 19, 1890, James C. Hope, who had succeeded to the title to the land here in question, conveyed it to Thomas W. Moore (husband of defendant Mary Theresa Moore) for a consideration of approximately $20,000, which consideration was wholly paid by defendant Mary Theresa Moore.

On July 17, 1894, Thomas W. Moore conveyed the property to Mary Theresa Moore, and thereafter, to wit, on June 17, 1897, following Mr. Moore's discharge in bankruptcy proceedings on the preceding day, Mrs. Moore reconveyed the property to Mr. Moore. Approximately nine months later, that is to say, on March 24, 1898, Mr. Moore again conveyed the property to Mrs. Moore. It is the last-named

instrument which plaintiff here seeks primarily to have set aside.

On March 22, 1911, Thomas W. Moore and Mary Theresa Moore gave a mortgage on the property to the Central Bank of Santa Barbara to secure a loan and future advances, which mortgage was later foreclosed. On October 13, 1917, which was within the time allowed by law for the redemption of the property foreclosure sale, the property was redeemed by Mary Theresa Moore with money obtained by her from the sale of the property to defendants Basil Fox and Thomas Fox, who procured the money necessary for the purpose by remortgaging the property to the Santa Barbara Savings and Loan Bank, which is the predecessor in interest of the Commercial Trust and Savings Bank, one of the defendants herein. The deed given by Mrs. Moore to defendants Fox and the mortgage given by defendants Fox to the Santa Barbara Savings and Loan Bank are also the subject of plaintiff's attack.

Plaintiff's cause of action is based upon a claim allowed him in the probate proceedings in the matter of the estate of Thomas W. Moore, deceased, which claim arose from an alleged indebtedness created by Thomas W. Moore in favor of plaintiff in 1914, or approximately sixteen years after the deed in question was given by said Moore to his wife Mary Theresa Moore, defendant herein. The deed was not recorded until shortly before the death of Mr. Moore and not until after his indebtedness to plaintiff was incurred. The evidence, however, shows that in extending credit to Mr. Moore, plaintiff placed no reliance in Moore's apparent record ownership of the property. Plaintiff testified, among other things: "I didn't make an investigation to see who owned the ranch. I was not interested in it."

On the trial of the action, among other facts, the court found that "it is not true that said Thomas W. Moore was in straitened circumstances or heavily or at all indebted at the time he executed said deed of grant to the defendant Mary Theresa Moore." The court further found that said defendant Mary Theresa Moore was without knowledge of any fraudulent intention of the said Thomas W. Moore in executing said deed and did not participate in any fraud, but accepted said deed in good faith, and that said deed was not made with the intention to injure or delay or defraud Moore's creditors. Furthermore, that the instrument of con-

veyance of said real property from Mary Theresa Moore
to defendants Fox was not made or accepted by said defend-
ants or by either of them with knowledge of the facts alleged
in the complaint. Also, that it was not true that at the time
of the execution of said last-mentioned conveyance said
defendants Fox had actual or any knowledge of a certain
action involving issues similar to those presented in the
instant case, brought by George W. Southwick against Mary
Theresa Moore, or of the fact that said conveyance from
Moore to his wife was fraudulent, and that neither of said
defendants knew of the pendency of said action brought by
Southwick. In addition thereto, the court found that it
was not true that at the time of the making or the delivery
of the promissory note and mortgage from the defendants
Fox to the Santa Barbara Savings and Loan Bank any officer
of said bank had actual or any knowledge of the said action
brought by said Southwick, or of the alleged fraudulent
nature of the conveyance from Moore to his wife, or had
actual or any knowledge that the conveyance from Mary
Theresa Moore to the defendants Fox was made or accepted
by said defendants with knowledge of the alleged fraudulent
nature of said conveyance from said Thomas W. Moore.

Judgment was rendered in favor of the defendants, and it
is from such judgment that the appeal herein is taken.

Appellant urges that the evidence is insufficient to sustain
the finding of the court to which reference has been had
that "it is not true that said Thomas W. Moore was in strait-
ened circumstances or heavily or at all indebted at the time
he executed said deed of grant to the defendant Mary
Theresa Moore."

The bringing of the action was authorized by the pro-
visions of section 1589 of the Code of Civil Procedure, which,
is supplemented by the rule set forth in section 3439 of the,
Civil Code, and which declares in effect, among other things,
that any transfer of property with intent to delay or de-
fraud any creditor of his demand is void.

The complaint contains an allegation that "while said
Thomas W. Moore was in straitened circumstances and
heavily indebted said Thomas W. Moore, . . . without valu-
able consideration therefor and with intention to injure,
delay and defraud his creditors and particularly this plain-
tiff, voluntarily conveyed to the defendant Mary Theresa
Moore" the property in question.

For the purpose of sustaining such allegation of the complaint, certain evidence was introduced by plaintiff which tended to establish the fact that Thomas W. Moore was insolvent at the time he executed the deed of the property to defendant Mary Theresa Moore. The evidence to which attention has been directed is neither of the quantity nor quality which might be expected for the purpose of establishing so important a fact. One witness testified that *subsequent* to the transfer Mr. Moore had said that "he wanted to sell the ranch and hadn't been able to sell it, and wanted some money because he owed some money, and he wanted to pay his creditors." Other witnesses testified regarding certain alleged debts which were owing by Mr. Moore, but none of such witnesses was specific as to the time other than that it was in the years "1898 and 1899." There was, however, evidence that in 1896 the property in question had been sold to the state for delinquent payment of taxes and had not been redeemed until 1900; that about six months after the deed to Mrs. Moore was executed, Mr. Moore transferred certain leases to secure certain debts; that certain mortgages were executed by Mr. and Mrs. Moore on the property, some of them before and some of them after the date of the execution of the deed in question, and that during all such times Mr. Moore had no special business or occupation.

Considering such evidence, it is manifest that any person, however great his assets were, might be desirous of selling some property, or even all his property if it were contained in one parcel and more salable or capable of inducing a higher price by reason of that fact, for the purpose of paying pressing debts, but which obligations in their entirety might be insignificant in amount as compared with the total value of his estate. It is likewise apparent that in these days when speculation is rife any man who is not extremely cautious or conservative may be led into making so-called "investments," with the result that to-day he may be in comfortable financial circumstances and within a week or a month hence may be utterly bankrupt. As is said in the similar case of *Windhaus* v. *Bootz*, 92 Cal. 617, 621 [28 Pac. 557, 558]: "In these pushing, busy times, fluctuations in a man's financial condition are probably the general rule." So that considering the fact that only nine months before the execution of the questioned deed Thomas W. Moore was dis-

charged in bankruptcy proceedings, statements by witnesses made many years after the happening of the event, fixing the dates so loosely as "during the years 1898 and 1899" when Thomas W. Moore was "heavily indebted," are too speculative in their nature and leave too much room for conjecture. The fact that the taxes on the property were allowed to go delinquent in 1896 and not paid until 1900, while possibly indicating financial distress on the part of the owner of the property involved, is not conclusive; but, to the contrary, may be attributed to, and is readily explainable as, having occurred through mistake or oversight. With reference to the assignment of leases and the several mortgages given by the Moores on the property (some of which occurred before, and some after, the date of the deed in question), it need only be said that such transactions are at least of daily occurrence and are generally not thought necessarily to indicate financial difficulties to the extent of showing an intention to defraud creditors. The circumstance that Mr. Moore "had no special business or occupation," to say the least, is not a compelling reason for adjudging him guilty of fraud.

On the other hand, the evidence of Mr. Moore's lack of intention to hinder, delay, or defraud his creditors, if any, was also of a weak and unsatisfactory character. With relation thereto, Mrs. Moore testified in substance that at the time the deed was made she and her husband were living on the ranch; that she had invested money in blooded stock, and that Mr. Moore was looking after the business for her; that she did not hear him say whether he was indebted or not; that she knew he was solvent, explaining that she did not know that he owed any debts; and that he had income from the ranch in 1898. In part, she testified: "At that time I had money, but I don't know about Mr. Moore, because sometimes he would make sales and have money, and other times he would ask me for money." It also appeared in evidence that the property in question covered but 268 acres of land, but that in the month of March, 1898 (being the month and the year in which the deed in question was executed), Moore was assessed with 450 acres of the Hope ranch, besides furniture, wagons, harness, and horses—of what value, either as assessed or actual, not being disclosed—nor is there testimony as to the actual ownership of the property assessed.

It thus appears that the total evidence regarding the pivotal point in the case was unreliable, not from a standpoint of lack of integrity in the several witnesses but solely because of their failure to be specific or definite. [1] The burden of establishing the fact rested upon plaintiff. The allegation contained in plaintiff's complaint, in substance that the conveyance was made by Moore "with the intention to injure, delay and defraud his creditors," demanded that the evidence tending to establish that fact, or those facts, at least preponderate over the evidence or the presumption to the contrary. It is said in the case of *Emmons* v. *Barton,* 109 Cal. 662, 671 [42 Pac. 303, 305] : "If such a conveyance be made with intent to defraud creditors it is void as against the creditors; but the intent is a question of fact and must be averred and proved. A voluntary conveyance is not *prima facie* fraudulent, and a fraudulent intent is not to be arrived at as a presumption of law. (Civ. Code, sec. 3442; *Threlke* v. *Scott,* 89 Cal. 351 [26 Pac. 879] ; *Windhaus* v. *Bootz,* 92 Cal. 617 [28 Pac. 557] ; *Bull* v. *Bray,* 89 Cal. 286 [26 Pac. 873].)"

[2] The allegation to which attention has been directed, if not involving criminal intent, is analogous thereto. The rule of the criminal law would forbid any presumption of guilt. To the contrary, at the outset the innocence of the act in question would be presumed and such presumption would continue until the guilty intent had been established beyond a reasonable doubt; and while the same degree of proof as to a criminal tendency would not prevail in a civil action grounded on fraud, the rule requiring that where fraud is alleged it must be clearly proven to the satisfaction of the court should obtain. [3] In any event, in the instant case the effect and the value of the evidence was for determination by the judge of the trial court; and where the evidence is conflicting, the decision of the issue involved rests within the discretion and sound judgment of such judge and cannot be disturbed except where it manifestly appears that such discretion has been abused. [4] The question of the alleged fraudulent intent of Moore in making the conveyance not having been clearly shown by reason of his insolvency at or about the time the conveyance was made, or by reason of any other fact adduced in evidence, and there being some evidence, however slight, from which his solvency at such

time might be inferred, it follows that the conclusion reached by the trial court that "it is not true that said Thomas W. Moore was in straitened circumstances or heavily or at all indebted at the time he executed said deed of grant to the defendant Mary Theresa Moore, . . . and that said deed was not made with the intention to injure or delay or defraud Moore's creditors," is supported by the evidence, and appellant's contention to the contrary cannot be sustained.

[5] Certain other findings of the court are also attacked by appellant. They relate either to knowledge on the part of each of the several defendants of the alleged fraudulent intention of Thomas W. Moore in executing the deed to the property, or to knowledge or notice, actual or constructive, of defendants Fox and Santa Barbara Trust and Savings Bank at the time or times when the deed and mortgage in which such defendants were interested were executed, of the pendency of a certain action involving issues similar in all respects to the issue raised in the instant case. The record contains substantial evidence to justify the court in its several conclusions with reference to each of such findings, and, as hereinbefore indicated, the findings of the trial court are conclusive. In addition thereto, assuming that the evidence was sufficient to sustain the main finding, which is determinative of the case, that no fraud was practiced by Thomas W. Moore in making the deed to Mary Theresa Moore, the question of the sufficiency of the evidence to sustain the other findings would become immaterial.

Other points for reversal, such as the estoppel of Mary Theresa Moore, the legal effect of the knowledge and notice of all the defendants regarding the alleged fraudulent nature of the conveyance in question, as well as constructive notice to several of them with reference thereto, as obtained from the pendency of the action referred to in the findings and to which attention has been directed, are all likewise dependent upon appellant's claim of error in the main finding by the court to the effect that Moore had no fraudulent intent in making the conveyance of the property to defendant Mary Theresa Moore. The legality of such finding having been determined as against appellant's contention in that regard, each and all of the several legal questions predicated

upon a state of fact thus found to not exist are unnecessary of determination by this court.

It is contended by appellant that certain errors of law were committed by the trial court in the reception or the rejection of evidence and which errors prejudicially affected the decision of the case in favor of the defendants.

The first alleged error has to do with the refusal of the court to permit evidence relative to an interpretation requested of a witness of the terms of a real estate business partnership agreement which had existed between the witness and Moore by which "sales, rentals, leases or other transactions" respecting the property owned by either party to the agreement were to be excluded from the partnership business. The witness was asked the question: "Do you know what property the party of the first part (Moore) referred to in that agreement?" An objection that the question was "an attempt to vary a written instrument by parol" was sustained. [6] Counsel for appellant admits that "the question may possibly have been vulnerable to objection on other grounds." Assuming that appellant's suggestion is correct (of which we entertain no doubt), no error was committed by the trial court in sustaining the objection. (*Spottiswood* v. *Weir,* 80 Cal. 448 [22 Pac. 289]; *People* v. *Graham,* 21 Cal. 261; *Miller* v. *Van Tassel,* 24 Cal. 459.) In *People* v. *Graham,* 21 Cal. 261, 266, it is said: "If the court decides correctly in rejecting the testimony, it is not important whether the best objection was made, or whether any objection was made."

[7] It is next urged that the court erred in denying plaintiff's motion to strike out certain testimony on the ground that it is not responsive to the question which had been asked. An examination of the record discloses the fact that the matter to which objection was made was a continuation of the answer of the witness to a previous question, in which answer the witness had been interrupted by a later question asked for the apparent purpose of explaining a part of the answer already made. In such circumstances appellant should not be heard to complain.

[8] Appellant's final specification of error on the part of the court consists in the granting of a motion to strike out certain testimony. One of the attorneys representing the defendants had been called as a witness on behalf of the

plaintiff and has been asked certain questions regarding an option which he had given to purchase the property in question. His evidence showed that he had given the option in his individual capacity and without any authority to bind either or all of the defendants. It appeared, however, that in some other minor matters he had represented the defendants or some of them in dealing with the property. From such considerations, aside from the question of the materiality of the transaction (which is neither explained by counsel for appellant, nor apparent to this court), no sufficient foundation was laid for the introduction of any evidence relating to the option. Besides, even though the evidence had been permitted to remain in the case, it would not have affected the one vital question as to whether or not the deed from Thomas W. Moore to Mary Theresa Moore was made for the purpose of injuring, delaying, or defrauding the creditors of Thomas W. Moore. As a consequence, no error was committed by the court.

The judgment should be affirmed. It is so ordered.

Conrey, P. J., and Curtis, J., concurred.