[Civ. No. 6540. First Appellate District, Division One.—February 18, 1929.]

C. S. SCHWARTZ, Executor, etc., Respondent, v. J. F. S. BRANDON et al., Appellants.

C. W. White and J. J. Rose, Jr., for Appellants.

E. H. Christian for Respondent.

WARD, J., *pro tem.*—Since the filing of the transcript in this case C. S. Schwartz, the executor of the estate of Jonas Schwartz, was substituted as plaintiff and respondent in the place and stead of Jonas Schwartz, deceased.

The point in this case is: Was a conveyance of property, described in the complaint, made by the appellant, J. F. S. Brandon, to his wife (his co-defendant), Thereza S. Brandon, while he was insolvent, or did such conveyance make him an insolvent, and was such transfer made for the purpose of hindering, delaying, and defrauding the original plaintiff, and for the prevention of his opportunity to realize upon any recovery he might make as against the defendant, J. F. S. Brandon, for injuries received by him, as an employee in the course of his employment within the provisions of the Workmen's Compensation, Insurance and Safety Act of 1917?

A chronological epitome of the case is enlightening. In March, 1926, Jonas Schwartz was injured, so, also, was the defendant J. F. S. Brandon. On April 22d following Brandon conveyed the lands described in the complaint to his wife, his co-defendant herein, for love and affection. Approximately three months thereafter ten acres of the property thereby conveyed was sold, and a mortgage of $6,000 to one Mattos, which had been given by J. F. S. Brandon, was paid out of the proceeds. On July 21, 1926, a letter of instruction was delivered to a bank in Alameda County, signed by J. F. S. Brandon, inclosing a deed of himself and wife to certain lots, being part of property conveyed by gift deed to the wife, and containing the words ''upon payment for my account of the sum of $4,950.00 you are authorized to deliver this deed,'' etc. Five days thereafter a check on the bank made payable to the order of Brandon and his wife was indorsed by Brandon as to his own name and as to that of his wife. On the same date a deed for said lots was delivered to J. J. Rose, Jr. On the following date, July 27, 1926, Jonas Schwartz was awarded $3,341.10 payable in installments of $20.83/100. Three hundred and twelve dollars and forty-five cents was noted as installments for fifteen weeks past due (which brought it to within one week of the accident). Two hundred and seventy-four dollars and eighty cents was the cost of hospital, drugs, and nursing expenses. Medical attendance was to be determined later. On October 6, 1926, a certified copy of the award of the Industrial Accident Commission was filed with the clerk of the superior court of Alameda County, and judgment entered in accordance therewith. Four days thereafter execution was duly issued and delivered to the sheriff of Alameda County and returned wholly unsatisfied, and the judgment at the time of trial was unpaid and unsatisfied. On October 13, 1926, the present action to set aside the deed of gift was instituted.

There are many interesting bits of evidence appearing in the transcript. The twenty-acre piece of land had been held by J. F. S. Brandon in his own name for a period of approximately twenty years, and the other properties had been held by J. F. S. Brandon for a long period of time. The value of the property conveyed was about $20,000 and two small pieces of real property which were retained in his

name were of a value of about $500. His deposits on the date of the deed of gift aggregated $1,380.61. At the time of trial he had $200 assets in the form of moneys due him. J. F. S. Brandon was ill at the date of making the gift deed, and so remained for several months without earning capacity, and during the period of the trial was "getting started again." Throughout his illness his expenses and the expenses of his family were paid from his personal funds. There is some evidence that he owns some property in the Azores Islands. This may be dismissed from consideration, as no court would be heard to say that a workmen's compensation for industrial injury shall go to a foreign country for liquidation while the debtor gives away his California property for the reasons of love and affection, thus putting it presumptively beyond his power to respond in damages. The primary purpose of the Workmen's Compensation Act was to give a speedy remedy, without protracted litigation and expense. Relegating a creditor to the Azores would defeat the recovery.

▪ ·Appellant contends that the deeding of his property to his wife was during his sickness and done for the protection of his wife and family. These are laudable objects as put forth by appellant at page thirty of his brief: "If any presumption is to be at all indulged in, it should be the presumption of innocence, and that the act of Brandon in making the deed was prompted by his realization while so sick in bed that life was uncertain, and the laudable impulse to give his property as set forth in the deed to his wife for her protection and livelihood and thus avoid as to her the expense and delay in administration of his estate." Would not his estate, in the event of his death, be required to be administered for the other small bits of property here, and for the property in the Azores, would it not be required to be administered both here and in the Azores? Would not the best protection of his wife require that she have ready cash wherewith to pay household expenses and the expenses of Brandon's illness and possible death—if he were considering the "uncertainties of life" as meaning the span of life, and not the uncertainty of the outcome of a tort committed by himself? During all this time he did not transfer to his wife that very needful thing, the cash. Certainly his acts and omission to act are inconsistent with the theory of

appellant's attorneys. It is argued on behalf of appellant that "a debtor being desirous of avoiding payment of his debts would in the very nature of events, in order to hinder, delay and defraud his creditors, dispose of all his property and particularly such property as is easily reached by execution, as bank accounts." This is answered by what is within the common knowledge of all—a levy on the two small parcels would be certainly expensive; it was testified that one piece was bought at a tax sale for $27.50 or thereabouts, and a suit to quiet title was pending on it at the time of the gift deed, and the other was represented at that time by a deposit which had been paid on account of its purchase, the consummation of its purchase being dependent apparently upon an impending sale which later was accomplished and which fixed his equity in the property at $300. Brandon is presumed to have known the law and to have known that his bank account could not be touched by attachment in the matter of this damage, but only by the levy of an execution, after the award which was on July 27, 1926. We do not find any evidence to show just when this money was drawn out, but Brandon knew as a matter of fact, that as a commercial account it was drawable instantly at the first scent of danger, because the execution could not be issued until after the award was filed and judgment had in the superior court upon it. In October, 1926, the sheriff could find nothing wherewith to satisfy the judgment. If the property conveyed by the deed of gift had remained in the hands of Brandon, the sheriff could have levied upon it and made the satisfaction of judgment, no part of which has been paid since the award. What caused the hindrance and the prevention in the collection of the award? Unquestionably, this deed to a total of $20,000 worth of real property. Men are presumed to know what the reasonable consequences of their acts may be, and to intend that such results shall flow therefrom. In this instance, those results are absolutely self-evident, namely, that the plaintiff could not realize upon his award.

In answer to appellant's contention that the complaint does not state facts sufficient to constitute a cause of action, and that the demurrer should have been sustained upon the ground that the complaint does not show that defendant J. F. S. Brandon did not have other property

from which judgment could be made or that it does not show that he made himself insolvent by the deed of gift and intimating that proceedings supplemental to execution were necessary, if these allegations could be avoided, it must be borne in mind that the complaint alleges the issuance of execution and its return wholly unsatisfied. *Benson* v. *Harriman et al.*, 55 Cal. App. 483 [204 Pac. 255], holds this as a *prima facie* showing.

■ Supplemental proceedings, so far as they would be directed to J. F. S. Brandon, individually, would have brought the plaintiff to an impasse, if appellant's counsel is correct in his argument that any evidence that Brandon gave would be for or against his wife and that he could not testify without her consent. However, we cannot hold with that contention of appellant's as applicable to this case. Brandon and his wife appeared by filing a joint answer, seting up the deed, claiming that it was *bona fide* and a valid transfer. Placing the deed itself in issue constituted an express waiver of the privilege of section 1881 of the Code of Civil Procedure. Cross-examining Brandon before making the motion to strike out again waived the point, and recalling him in his own behalf, when he virtually only reiterated the testimony he gave when called as a witness by plaintiff, constituted another waiver, his testimony being in favor of his co-defendant, his wife, and without objection by her. Of these various kinds of waivers the cases, respectively, of *Tobias, Admr.*, v. *Adams*, 201 Cal. 689 [258 Pac. 583], *Johnston* v. *St. Sure*, 50 Cal. App. 735 [195 Pac. 947], and *King* v. *Haney*, 46 Cal. 561 [13 Am. Rep. 217], are of interest. Quoting from the latest decision upon subdivision 1, section 1881 of the Code of Civil Procedure, *Tobias* v. *Adams, supra*, in which the court said: "It would be monstrous if husband and wife might between themselves conspire to defraud the creditors of the one or the other and to conceal their act produce a written instrument which is immune from all inquiries and which must be accepted by the defrauded party as final. The freedom of contract between husband and wife and the power to transmute community property into separate property or *vice versa* by agreement between themselves renders it imperative that when such an agreement is relied upon by their joint answer, thereby the whole subject matter of said agreement is open to inquiry which

may include communications from one to the other.'' Our attention has been called to *Marple* v. *Jackson,* 184 Cal. 412 [193 Pac. 940], a case similar in many respects to the instant case, but this deed was dated ten years prior to the judgment, though it was not recorded until about two months prior thereto and almost fifteen months before execution. In the Marple case the court, after hearing the evidence of the wife, found that the premises were her separate property, and the supreme court held that ''we are not prepared to hold the court was not justified in finding that appellants had not overcome the presumption in favor of delivery.'' In the instant case the deed was dated April 22, 1926, and recorded less than three months before the award was actually made. In *First National Bank of Haskell* v. *Ranger,* 49 Cal. App. 451 [193 Pac. 790], the court upholds the doctrine contended for by appellant, but points out ''as between husband and wife the declared policy of the law is to encourage confidence and preserve it inviolate, and hence, the broad provisions of the statute quoted, subject however, to exceptions within which the case is not included.'' Perhaps one of the exceptions that the court had in mind was just such a case as this when the good faith of the defendants is placed in issue.

The objection that plaintiff's case has not been made out by a preponderance of the evidence is not reviewable upon appeal. (*Goodwin* v. *Franich,* 37 Cal. App. 493 [174 Pac. 83].) The discretion and judgment of the trial judge may not be disturbed save in the instance where it clearly appears that such discretion has been abused. (*Carega* v. *Moore,* 70 Cal. App. 621 [234 Pac. 121].) No such abuse of discretion appears; on t\e contrary, the trial judge seems to have been well fortifie\ in his findings. A perusal of the transcript shows unmistakably J. F. S. Brandon's dominion over the property after transfer. He testified that he was acting as the agent of his wife, but neither the letter to the bank nor the indorsements on the check were made as agent.

The contention is made by Brandon that his debt to Mattos of $6,000 must not be considered as a debt owing by him, because it was secured by the mortgage of the property. It was his note, and it was not assumed by the terms of the deed by the grantee, his wife. Consequently,

if the security were waived, or for any cause arising thereafter, the amount could not be made from the property, the burden of payment would be Brandon's. Not assuming a debt in the deed, the grantee leaves the grantor as he was, a debtor until discharged by payment. The futurity of a payment does not change the fact of the existence of a debt from the moment of incurring it. Independent of the property conveyed to his wife, it is apparent that he could not have met this obligation.

Our code provides that all personal injuries must be brought within one year from the date of the injury, and if not so brought the statute of limitations may be invoked to prevent recovery. This simply means that the date of the inception of the liability is the date of the injury. It possibly may not be merged into a judgment for a fixed amount until after the expiration of the year, but it must be predicated upon an event before that time. Appellant contends that defendant Brandon was not indebted to plaintiff on the date of the deed to his wife. It is not reasonable to conclude that responsibility begins upon the filing of a claim or complaint or upon the entry of judgment or the making of an award because such action would be based upon prior acts and occurrences. The award or judgment is only the legal affirmance of a responsibility or debt theretofore existing. See Freeman on Executions, fourth edition, section 137a, in which he says: "one having a claim for a tort is a creditor before the commencement of an action thereon." See, also, *Chalmers* v. *Sheehy*, 132 Cal. 459 [84 Am. St. Rep. 62, 64 Pac. 709], and *Melvin* v. *State*, 121 Cal. 16 [53 Pac. 416], wherein it was held that the word "debt should be given its modern significance as including any sort of obligation to pay money." It is true that the debt was an increasing one under the plan worked out by the "Workmen's Compensation and Insurance Act of 1917," that is, that Schwartz could not recover immediately the full amount of $3,541.10 and that only $312.45 had accrued up to July, 1926, nevertheless it was an obligation to pay when due. "A creditor . . . is one in whose favor an obligation exists by reason of which he is, or may become entitled to the payment of money" (sec. 3430, Civ. Code), and "A debtor . . . is one who by reason of an existing obligation is or may become liable to pay money, whether such liability is certain or

contingent." (Civ. Code, sec. 3429.) We must conclude from the foregoing that the injured party was a creditor from the date of the accident. The instant of the accident and injury, Brandon knew as a matter of law that plaintiff had a cause of damage against him. It was an impending liability, the amount of which was indefinite until award, except approximately in accordance with the Workmen's Compensation Act. To this extent Schwartz was the creditor and Brandon the debtor.

Considerable stress is laid upon the fact that these were weekly payments, outside of the award for hospitalization, etc., but the award itself was for $3,541.10 and the mere fact that it was made payable in installments for the convenience of the debtor in no way affects the sum awarded as a whole. Over $500 was due on July 27, 1926, and every week thereafter added its toll up to the time of the levy of execution. Knowing this, Brandon knew also that the transfer he was making to his wife would render him unable to meet that obligation, and that the transfer had that effect is apparent and is not refuted. ▇ A grantor who sets up a voluntary conveyance knowing that he has pre-existing creditors is required to prove that he had means to satisfy the creditors, at the time of the transfer, over and above the value of the transferred property. Bump on Fraudulent Conveyances, sections 254, 255, and also in *Schwartz* v. *Hazlett*, 8 Cal. 118, it was said: "It may be safely assumed that when a person makes a gift of such proportion of his property, as considering the amount of his existing debts, a prudent and just man would not make, this circumstance is conclusive evidence of fraud. If at the time the gift is made there is a reasonable ground for the fear that existing creditors will not be paid and it should afterward turn out that the other property of the donor is insufficient, the gift should be set aside. . . . It cannot be supposed that our statutes intended to protect the donee against anything, except those unexpected events that prudence and integrity could not foresee."

In this case the evidence proves that at the instant of the injury Brandon was worth at least $15,000 and more likely $20,000, and that six months thereafter, as a result of his own act in giving away his property, he was reduced to a condition where he could not pay an aggregate of a few

hundred dollars. The later conduct of the defendant proved that he made this conveyance with full knowledge that he was hindering and delaying, by the conveyance in fraud, Schwartz's right to recover his award.

We have reviewed the cases cited by counsel for plaintiff and by counsel for defendant and we consider our position in affirming the judgment of the lower court in consonance with the best thought therein. Any evasion of an award made under the provision of the Workmen's Compensation Act, such award being for damage done to the human body of a workman, is absolutely repellent to a sense of justice and fair dealing, and should be closely scrutinized, and most particularly where, as in this case, the admission is made of the debt due.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.