STOCKGROWERS STATE BANK v. SHULTZ, ET AL.

(No. 1534; April 16, 1929; 276 Pac. 532)

For the plaintiff and appellant, there was a brief by Chas. *L. Brome* of Basin, and oral argument by *Mr. Brome.*

For defendant and respondent, Ruby C. Schultz, there was a brief by *E. E. Enterline* of Casper, and oral argument by *Mr. Enterline.*

*Chas. L. Brome*, in reply.

RINER, Justice.

This case is before the court upon direct appeal from a judgment entered upon the verdict of a jury directed by the District Court of Washakie county in favor of defendant and respondent Ruby C. Shultz. The action was

instituted by the plaintiff and appellant, the Stockgrowers State Bank, against Shultz and also one George D. Cureton. The latter never having been served with process and never having appeared in the case, it proceeded to trial and judgment with Schultz as the only party defendant.

The plaintiff's petition contains two causes of action, but inasmuch as appellant states in his brief that all claims under the alleged second cause have been settled in other litigation, it is unnecessary to regard it here. An abstract of the petition's first cause of action is to the following effect: That the plaintiff is a Wyoming corporation, engaged in the banking business at Worland, Wyoming; that Ruby C. Shultz and George D. Cureton were partners on September 20, 1918, in the conduct of a retail drug store in the town of Worland under the firm name of George D. Cureton; that prior to the date last mentioned, the defendants purchased from L. A. Millard a drug stock and fixtures in said town for $9,606.10, of which amount $6,106.10 had been paid the vendor; that prior to the sale the parties to it made no attempt to comply with the requirements of Sections 4720, 4721 and 4722, W. C. S. 1920, commonly known as the Bulk Sales Act; that at the date of the sale and also of the agreement presently to be mentioned, Millard owed $5,100 to the plaintiff, $3,700 to the First National Bank of Worland, $2,500 to Davis Brothers Drug Company, a Colorado corporation, and $3,500 to other wholesale creditors; that on September 12, 1918, plaintiff brought an action against Millard in the District Court of Washakie County, Wyoming, to recover the amount due it as aforesaid, and procured an attachment order and garnishment for $5,000 in cash, claimed by plaintiff to be Millard's property in the hands of the Wyoming Sugar Company; that Millard at the time of his drug store sale was insolvent, and the defendants, to enable plaintiff to recover

its claim from Millard and to avoid liability under the Wyoming Bulk Sales law, and also to prevent initiation of bankruptcy proceedings, proposed to plaintiff jointly with the First National Bank of Worland and the Davis Brothers Drug Company, that if plaintiff would prosecute the attachment suit aforesaid and refrain from endeavoring to collect its debt from defendants and from undertaking to initiate bankruptcy proceedings against Millard, that in the event the plaintiff did not realize the full amount due it on its claim against Millard, then the defendants would share such loss with the plaintiff and share also the actual costs of such suit and the attorney's fees therein not to exceed $400; that on September 20, 1918, plaintiff and defendants, the First National Bank of Worland, and the Davis Brothers Drug Company, executed a memorandum in writing setting forth the conditions upon which the other parties thereto would share such loss, if any, and the ratio thereof, as well as the share each should pay of the court costs and attorney's fees expended by plaintiff in said suit—the memorandum and signatures thereto being set out verbatim; that plaintiff prosecuted its attachment suit with the result that it was finally lost, and there was a failure to obtain any portion of the debt alleged to be due it from Millard; that plaintiff complied with all the terms and conditions of this agreement on its part, by it to be performed; that the proportionate share of the loss so sustained by plaintiff and which the defendants agreed to pay is the sum of $2,033.13; that there is due from the defendants to plaintiff on account of the portion of attorney's fees and costs, which the defendants also agreed to pay, the sum of $150.87, and that these sums remain unpaid, although plaintiff has demanded them of the defendants. The answer of the defendant Shultz was a general denial.

A jury having been requested, the trial proceeded and at the close of plaintiff's case the defendant Shultz declined to introduce any evidence but also rested his case.

Whereupon both parties moved the court for a directed verdict. The motion of Shultz being sustained, that of the plaintiff being denied, the jury was given a peremptory instruction to find in favor of defendant and the usual form of judgment was entered thereon.

A number of assignments of error have been made and argued by appellant upon this record. They principally relate to the rejection of evidence by the court during the course of the trial. The agreement of September 20, 1918, pleaded in plaintiff's petition was received in evidence and shows that it has attached to it, with the signatures of the other parties already mentioned, the signature "George D. Cureton," but not that of the defendant and respondent Ruby C. Shultz. It is claimed for appellant, however, that on the date the agreement was executed, Cureton and Shultz were partners in the conduct of a retail drug and pharmacy store "under the firm name and style of George D. Cureton." The pivotal question in the case therefore is, whether the general finding below that there was no such partnership at the time the agreement was signed—the legal effect of granting defendant's motion for a directed verdict (O'Brien v. Galley-Stockton Shoe Co., 65 Colo. 70, 173 Pac. 544; Glanzer v. Shepard, 233 N. Y. 236, 135 N. E. 275, 23 A. L. R. 1425; Campbell v. Willis, 53 App. D. C. 296, 290 Fed. 271; Buetell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654) was clearly against the weight of the evidence before the trial court. Where each party has requested that a peremptory instruction be given the jury in his favor, the rule in this court is as stated in Sneider v. Big Horn Milling Co., 28 Wyo. 40, 200 Pac. 1011.

"It appears in this case that each party, at the close of the testimony, asked the court for a directed verdict, without at any time, before or after the ruling of the court thereon, asking that the jury pass upon any questions of fact. By this course they waived the right to have the jury pass on any question of fact, and trans-

ferred its functions to the court. A finding of fact by the court made under such circumstances should not be set aside by a reviewing court unless clearly against the weight of the evidence.''

A careful review of each particle of evidence before the District Court on the point in question demonstrates, we think, the situation to be this: That the defendant Shultz furnished the largest part of the money which was used to purchase the drug stock and fixtures from Millard; that the written contract evidencing the agreement of the parties concerning this purchase was dated August 2, 1918, recited that it was between ''L. A. Millard of Worland, Wyoming, party of the first part, and Geo. D. Cureton of Lusk, Wyoming, party of the second part,'' and the checks for the purchase price were deposited in the plaintiff bank by the vendor Millard on September 10, 1918; that this agreement provided that the property sold should be inventoried by ''the parties thereto or their agents;'' that Shultz became ''interested'' with Cureton in the purchase of the property after Cureton had made the deal with Millard to buy it; that Shultz had charge of the invoicing and turning over of the purchase price and the property—Cureton at that time being in South Carolina; that on October 21, 1918, about a month after the contract in suit herein had been signed, Shultz, as a witness in the attachment suit mentioned in plaintiff's petition, admitted that he was then a partner of Cureton, that he had directed Cureton to stop payment on one of the purchase-money checks given Millard, and after doing that he and Cureton went into possession of the store together; that Shultz on that occasion also testified that Millard had possession of the store at the time he directed the check payment stopped; that the drug store was opened up after the contract of September 20, 1918 had been entered into between the parties.

The testimony of Cureton given during the trial of the attachment suit aforesaid, was offered in evidence as

bearing upon this matter, but was not received by the court. In our judgment this ruling was correct, as that action was between parties other than those in the present litigation and the issues were totally dissimilar. See 22 C. J. 428, Sec. 513; 430, Sec. 515; 431, Sec. 516, and extended list of cases cited.

The statute law of this state defines a partnership as "An association of two or more persons to carry on as co-owners a business for profit." Can it properly be said that the association of Cureton and Shultz, as recited above from the record as we find it, establishes them on September 20, 1918 as partners in the drug and pharmacy business purchased from Millard within the purview of this definition? Can we, on review, correctly say, that the trial court's findings is "clearly against the weight of the evidence" on the point? It is plain that Shultz, on the date last mentioned, was financially interested in the purchase of the business, and that he acted as Cureton's agent in completing the deal, but the nature of that interest, then, is not established. There appears no holding out of Shultz as a partner at the time the agreement of September 20, 1918 was executed by the four parties thereto. Hence the matter to be determined is, what was the actual legal status existing between Cureton and Shultz on that date? The instrument was signed by Cureton only and not by Shultz. The submitted proof is quite as consistent with an intention on Shultz' part merely to make a loan to Cureton and to act as his agent in closing up the sale, as with any intention on his part to constitute himself a partner, with all the obligations of that sort of a relationship, prior to and at the date of the agreement providing for the sharing of any loss plaintiff might incur in the attachment suit. Recalling that Schultz advanced by far the largest portion of the purchase price of the property, the facts shown are quite consistent, too, with an inference that the parties had agreed that Cureton alone should bear the responsibility of the contract in suit,

he having furnished a much smaller sum of money than Shultz towards that purchase price.

The fact that Shultz admitted a month after the agreement of September 20, 1918, that he was then Cureton's partner, hardly proves the prior existence of the relationship. It is to be observed there is a total absence of proof as to any proposed sharing of profits and losses between Cureton and Shultz. Cureton's deposition was not taken, neither was Shultz placed upon the witness stand under cross examimnation, although either or both of these proceedings would doubtless have aided materially in furnishing the court with more definite and accurate proof on the controlling question to be solved. The conclusion of the trial court as the proof stood was necessarily one of inference, to be drawn largely from facts and circumstances established and a few meager proven statements of the parties. There was no direct evidence upon the subject. Inasmuch as both parties to this litigation joined in a request that the court find the facts on the point in dispute between them, it is not our province to substitute our views on the evidence for that of the trial court. Even though we might reach a different result if we were trying the case anew, still, under the rule mentioned above as adopted in this jurisdiction, we cannot interfere unless the finding attacked is ''clearly against the weight of the evidence.'' We are unable to see that it is so here.

As previously indicated, there are other errors assigned and argued for appellant. Upon examination of them we find they deal with the rejection of evidence concerning other dependant issues in the case. It is well settled law that where a plaintiff would not have been entitled to recover in any event, rejection of evidence offered by him which could not have changed the result is harmless error. See DeWolfe v. Roberts, 229 Mass. 410, 118 N. E. 885; Price v. Engle, 77 Ind. App. 439, 133 N. E. 755; Erickson v. Macomber, 163 Minn. 514, 204 N. W. 313; Justice v. Watkins, 276 Pa. 138, 119 Atl. 824; Remmers v. Remmers, 239

S. W. (Mo. Sup.) 509; Deane v. Big Springs etc. Co., 138 Md. 388, 113 Atl. 891; McMillan v. Jaeger etc. Co., (Iowa) 186 N. W. 849; Careaga v. Moore, 70 Cal. App. 614, 234 Pac. 121; 4 C. J. 1009, Sec. 2993 and cases cited in appended notes. Inasmuch as the court on the controlling issue of partnership found against the plaintiff—a finding which, as has been pointed out, we cannot disturb—excluded evidence in regard to other minor issues in the case cannot avail appellant here.

It follows, therefore, that the judgment of the District Court must be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.